HOGAN LOVELLS US LLP
Michael M. Maddigan (Bar No. 163450)
Poopak Nourafchan (Bar No. 193379)
(admission in district pending)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
michael.maddigan@hoganlovells.com
poopak.nourafchan@hoganlovells.com

Attorneys for Defendant
United Healthcare Services, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA, LLC, a Delaware Corporation Doing Business As Shasta Regional Medical Center,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation licensed to do business in California, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No.  2:16-cv-01773-KJM-CKD<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[Judge Kimberly J. Mueller]<br><br>Date:        October 14, 2016<br>Time:       10:00 a.m.<br>Ctrm:       3 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................1

I.   THE KNOX-KEENE ACT AND INSURANCE CODE PROVISIONS
     INVOKED IN THE COMPLAINT DO NOT SUPPORT PRIME'S
     CLAIMS ...............................................................................................4

II.  PRIME'S CLAIMS ARE PREEMPTED BY FEDERAL LAW TO THE
     EXTENT THAT THEY INVOLVE SERVICES RENDERED TO UHC's
     MEDICARE ADVANTAGE MEMBERS ......................................................6

     A.  Federal Law Governs Medicare Advantage Plans ...........................6

     B.  Prime's Allegations Challenge UHC's Medicare Payments. ........................7

     C.  CMS's Federal Guidelines Govern The Payment Obligations Of All
         Medicare Advantage Plans. ..........................................................8

     D.  The Medicare Act Requires Prime To Exhaust Its Administrative Remedies
         Before Seeking Recourse In Court, And Prime's Claims Should Be
         Dismissed Because It Has Not Done So. ......................................10

     E.  THE MEDICARE ACT PREEMPTS ALL OF PLAINTIFF'S STATE
         LAW CLAIMS. ............................................................................14

III. PRIME'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
     RELIEF CAN BE GRANTED ................................................................16

     A.  Prime's Cause Of Action For Violations of Business & Professions Code
         Section 17200 Fails To Allege That UHC's Acts Were
         Unlawful, Unfair, Or Fraudulent. ...............................................17

         1. None Of The Conduct Alleged By Prime Is Unlawful ...............................17

         2. None Of The Conduct Alleged By Prime Is Unfair As A Matter of
            Law ...........................................................................................19

         3. Prime Does Not Allege That UHC's Conduct Is Fraudulent .....................20

     B.  Prime's Complaint Fails To State A Claim For Quantum Meruit. .............20

     C.  Prime's Claims For Breach of Contract And Breach Of The Covenant
         Of Good Faith And Fair Dealing Fail As A Matter of Law. ......................21

CONCLUSION ...............................................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple iPhone 3G Products Liability Litigation*,
728 F. Supp. 2d 1065 (N.D. Cal. 2010)............................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................4, 17

*Ass'n of American Medical Colleges v. U.S.*,
217 F.3d 770 (9th Cir. 2000) ..............................................................................12

*Associates Rehabilitation Recovery, Inc. v. Humana Medical Plan*,
76 F. Supp. 3d 1388 (S.D. Fla. 2014)..................................................................13

*Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255 (2006)......................................................................19, 20

*Bass v. Social Sec. Admin.*,
872 F. 2d 832 (9th Cir. 1989) .............................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................3, 16

*Berryman v. Merit Property Management, Inc.*,
152 Cal. App. 4th 1544 (2007)......................................................................17, 18

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .................................................................................17

*California Emergency Physicians Medical Group v. PacifiCare of California*,
111 Cal. App. 4th 1127 (2003).......................................................................21, 22

*Children's Hospital of Central California v. Blue Cross of California*,
226 Cal. App. 4th 1260 (2014).....................................................................1, 3, 5

*Congress of California Seniors v. Catholic Healthcare West*,
87 Cal. App. 4th 491 (2001).................................................................................19

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) .............................................................................................14

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

*Doctors Medical Center of Modesto, Inc. v. Kaiser Foundation Health*
   *Plan, Inc.*,
   989 F. Supp. 2d 1009 (E.D. Cal. 2013) ...................................... 10, 11, 12, 13, 16

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................ 20

*Ellsworth v. U.S. Bank, N.A.*,
   908 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................. 12

*Fid. Fed. Savings & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) ............................................................................................ 15

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................................ 20

*Guz v. Bechtel National, Inc.*,
   24 Cal. 4th 317 (2000) ........................................................................................ 23

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ...................................................................................... 10, 11

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
   41 Cal. App. 4th 1410 (1996) ............................................................................. 21

*Hewlett-Packard Co. v. Barnes*,
   571. F.2d 502 (9th Cir. 1978) ............................................................................. 18

*Ingels v. Westwood One Broad. Servs.*,
   129 Cal. App. 4th 1050 (2005) ........................................................................... 19

*Kaiser v. Blue Cross of California*,
   347 F.3d 1107 (9th Cir. 2003) ............................................................................ 11

*Kent v. DaimlerChrysler Corp.*,
   200 F. Supp. 2d 1208 (N.D. Cal. 2002) ............................................................. 14

*Lifestar Ambulance Serv. Inc. v. U.S.*,
   365 F.3d 1293 (11th Cir. 2004) .......................................................................... 11

*Luis v. Orcutt Town Water Co.*,
   204 Cal. App. 2d 433 (1962) .............................................................................. 22

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

*Martinez v. Socoma Companies, Inc.*,
   11 Cal. 3d 394 (1974) ........................................................................... 21

*Maystruk v. Infinity Ins. Co.*,
   175 Cal. App. 4th 881 (2009) ............................................................... 17

*McDonald v. Coldwell Banker*,
   543 F.3d 498 (9th Cir. 2008) ............................................................... 19

*New York City Health and Hospitals Corp. v. WellCare of New York, Inc.*,
   769 F.Supp.2d 250 (S.D.N.Y. 2011) ................................................... 16

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) .............................................. 19

*Phillips v. Kaiser Foundation Health Plan*,
   953 F. Supp. 2d 1078 (N.D. Cal. 2011) .............................................. 15

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ............................................................................. 14

*Spencer v. DHI Mortg. Co., Ltd.*,
   642 F. Supp. 2d 1153 (E.D. Cal. 2009) .............................................. 23

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................... 17

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2002) ............................................................... 14

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus*,
   ---F. Supp. 3d ---, 2016 WL 590222 (N.D. Ga. Feb. 11, 2016) ............. 12, 13, 16

*Uhm v. Humana, Inc.*,
   620 F. 3d 1134 (9th Cir 2011) ............................................... 3, 11, 15

*Whiteside v. Tenet Healthcare Corp.*,
   101 Cal. App. 4th 693 (2002) .............................................................. 22

**Statutes**

42 C.F.R. § 417.558 .................................................................................. 9, 13

42 C.F.R. §§ 422.1 *et. seq.* ............................................................................. 8

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

42 C.F.R. § 422.214 ..................................................................................9, 13, 15, 18

42 C.F.R. § 422.214(a) ............................................................................................. 16

42 C.F.R. § 422.250 ................................................................................................... 9

42 C.F.R. § 422.504 ................................................................................................... 8

42 C.F.R. § 422.520 ................................................................................................. 13

42 C.F.R. § 422.566(b)(1) ......................................................................................... 9

42 C.F.R. § 422.582 ................................................................................................... 9

42 C.F.R. § 422.600 ................................................................................................. 10

42 C.F.R. § 422.608 ................................................................................................. 10

42 C.F.R. § 422.612(c) ....................................................................................... 10, 13

42 U.S.C. § 405(g) ......................................................................................... 10, 11, 13

42 U.S.C. §§1395d, 1395k ......................................................................................... 6

42 U.S.C. §§ 1395g, 1395l ......................................................................................... 6

42 U.S.C. § 1395ii ..................................................................................................... 10

42 U.S.C. § 1395w–22(d)(1)(E) ...............................................................8, 9, 15, 18

42 U.S.C. § 1395w–22(g)(5) ............................................................................... 10, 13

42 U.S.C. §§ 1395w-21, 1395w-22(a) ....................................................................... 6

42 U.S.C. §§ 1395w-21, 1395w-23 & 1395w-24 ...................................................... 7

42 U.S.C. § 1395w-26(b)(3) ............................................................................... 3, 7, 15

California Business & Professions Code § 17200 ................................................... 17

California Civil Code § 1559 ................................................................................... 21

California Code Regs., tit. 28 § 1300.71 ................................................................... 4

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 11, 12

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

–v–

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

Fed. R. Civ. P. 12(b)(6) ....................................................................12, 13, 14, 16, 17

Fed. R. Civ. P. 12(h)(3) .................................................................................. 12

U.S. Const., Article VI, Clause 2....................................................................... 14

**Other Authorities**

https://www.cms.gov/medicare/health-
plans/healthplansgeninfo/downloads/ pdrc_process_manual-.p .......................... 9

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/
downloads/mc86c04.pd ...................................................................................... 9

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-vi-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

1

**INTRODUCTION**

2   The Complaint of Plaintiff Prime Healthcare Services – Shasta, LLC asserts a

3   grab bag of state law claims alleging that defendant United Healthcare Services,

4   Inc. ("UHC") has failed to reimburse Prime at the "reasonable and customary rates"

5   for emergency services provided to UHC's members, as required by California law.

6   Complaint, ¶ 8.  Prime has asserted the same or substantially similar claims against

7   UHC and other health plans in federal and state courts all over California and in

8   Nevada.

9   Reflecting the boilerplate nature of its allegations, Prime's Complaint is long

10  on rhetoric, but short on specific facts.  For example, the Complaint colorfully

11  alleges that UHC ran a "payment scheme" that "intentionally and artificially

12  deflated" the amounts UHC paid Prime for out-of-network emergency services

13  (Complaint, ¶¶ 8, 13), but it fails to describe how the scheme worked, who was

14  involved in it, or the mechanism that supposedly accomplished this artificial

15  deflation.  Similarly, the Complaint repeatedly asserts that UHC does not pay

16  "reasonable and customary" rates (*see, e.g.*, Complaint, ¶¶ 8, 13, 18, 29), but pleads

17  none of the facts that are necessary under California law to establish what its

18  reasonable and customary rates actually are – such as the amounts it is paid by

19  others for providing similar services.  *Children's Hospital of Central California v.*

20  *Blue Cross of California*, 226 Cal. App. 4th 1260 (2014).

21  To the contrary, the Complaint itself makes clear that, by "reasonable and

22  customary rates," Prime simply means that it ought to be paid the full amount of its

23  highest billed charges for the services it renders, every time.  *See* Complaint, ¶ 14

24  (Plaintiff believes the reasonable value of its services are "calculated as 100% of

25  Plaintiff's standard undiscounted rates"); ¶ 18 ("Plaintiff is entitled to recover the

26  reasonable value of its services as expressed in the billed charges presented to

27  Defendants.").  But the Complaint also pleads no facts to support that claim.  For

28  example, it does not explain how Prime's full billed charges are calculated or plead

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

facts showing that they are reasonable.  These shortcomings alone render the Complaint inadequate as a matter of law.

Like its factual foundation, the Complaint's legal underpinnings also provide no support for Prime's claims.  The Complaint concedes that different statutory and regulatory frameworks govern UHC's obligations to pay Prime, depending on the type of medical coverage UHC's members possessed and the type of services that Prime provided.  But the Complaint never identifies the specific underlying claims at issue, the type of member coverage involved in those claims, or even the type of services that Prime provided.  *See, e.g.*, Complaint ¶ 9 ("Defendant offers HMO (health maintenance organization) products regulated by the California Department of Managed Health Care ("DMHC")), Complaint ¶ 11("Defendant also offers PPO (preferred provider organization) products regulated by the Cal. Department of Insurance ("CDI") and subject to [the California] Insurance Code . . . ."), and Complaint ¶ 14 ("Plaintiff has provided… emergency services, post-stabilization services, ***and other services*** to Defendant's members.") (emphasis added).

Thus, although the Complaint repeatedly asserts that UHC has violated provisions of the Knox-Keene Act (Cal. Health & Safety Code §1345, et seq.), the Knox-Keene Act does not even apply to claims involving members with PPO coverage, as the Complaint itself acknowledges.  Similarly, although the Complaint repeatedly invokes Insurance Code sections 10123.13, 10123.147, and 10133 (a), those sections are inapplicable to claims involving members with HMO coverage, as the Complaint itself again expressly admits.  And the Complaint is entirely silent about members with Medicare Advantage coverage from UHC – not surprisingly, since Prime's attempt to recover an additional payment for Medicare claims is preempted by federal law.  In short, the Complaint never identifies which statutory scheme even is applicable to the underlying claims at issue, much less explain how UHC's conduct allegedly violated its statutory obligations.

1  Beyond this fundamental incoherence, the Complaint also falls short in

2  pleading the elements of the particular causes of action it purports to assert.  For

3  example, even though its entire Complaint is premised on the fact that it has ***no***

4  ***contract*** with UHC (Complaint, ¶ 7), Prime nevertheless purports to assert causes

5  of action for breach of contract, breach of the implied covenant, and breach of its

6  rights as a third party beneficiary, ignoring the long settled general rule under

7  California law that hospitals and physician groups may not assert these claims

8  against health plans based on the plans' contracts with individual members.

9  In short, Prime's Complaint falls far short of what is necessary to state a

10  plausible claim for relief under Rule 8(a) and Rule 12(b).  *Bell Atl. Corp. v.*

11  *Twombly*, 550 U.S. 544, 570 (2007) (A pleading must be dismissed pursuant to

12  FRCP 12(b)(6) if a party fails to allege "enough facts to state a claim to relief that is

13  plausible on its face.").  Prime's Complaint should be dismissed, for at least three

14  fundamental reasons.

15  ___*First*___, Prime's basic theory that it is entitled to recover its full billable charges

16  for the emergency and post stabilization services it renders to UHC members is not

17  supported by the California statutes on which Prime purports to base its claims.  To

18  the contrary, Prime's theory is squarely contrary to California law.  *See Children's*

19  *Hosp. of Cent. California v. Blue Cross of California*, 226 Cal. App. 4th 1260

20  (2014) (reversing jury award based on instruction that equated "fair and reasonable

21  value" with full billed charges).

22  ___*Second*___, to the extent that the underlying claims at issue involve Medicare

23  claims – and, based on the amount Prime alleges is at issue, UHC believes in good

24  faith that at least some of them do – Prime's claims are preempted by the Medicare

25  Act and barred by federal law, and this Court lacks jurisdiction under Rule 12(b)(1).

26  . 42 U.S.C. § 1395w-26(b)(3); *Uhm v. Humana, Inc*., 620 F. 3d 1134, 1148-50 (9th

27  Cir. 2011) (holding that Medicare Act preempts claims based on state common law

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-3-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

1   and consumer protection statutes).

2   ***Third,*** the Complaint fails to adequately plead any of its state law causes of

3   action.  Even if the few facts asserted in the Complaint are assumed to be true – as

4   opposed to the naked conjectures and bare conclusions – Plaintiffs still would not

5   be able to prove any of its claims.  Thus, the Complaint fails to state a claim for

6   relief and should be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("labels and

7   conclusions," or "naked assertions devoid of further factual enhancement" will not

8   survive a motion to dismiss) (internal citations omitted).

9

10  **I.    THE KNOX-KEENE ACT AND INSURANCE CODE PROVISIONS**

11  **INVOKED IN THE COMPLAINT DO NOT SUPPORT PRIME'S**

12  **CLAIMS**.

13  Prime bases its claims against UHC in part on Health & Safety Code sections

14  1317, 1371.4 and 1371.35.  Complaint, ¶ 16.  Section 1317 requires hospitals to

15  provide emergency care without regard to a person's ability to pay for those

16  services.  Section 1371.4 generally requires health plans to reimburse providers,

17  including non-contracted providers, for providing emergency services to their

18  members.  Section 1371.35 makes prompt payment rules applicable to emergency

19  claims.

20  None of these statutes specify the rate at which a health care service plan is

21  required to reimburse a non-contracted provider for emergency services.  The

22  Complaint itself implicitly acknowledges as much, pointing instead to regulations

23  promulgated by the DMHC as the measure of reasonable value.  *See* Cal. Code

24  Regs., tit. 28 § 1300.71.  Complaint, ¶ 10.

25  But merely citing these DMHC regulations is not enough to meet Prime's

26  pleading burden.  First, Prime's factually deficient Complaint includes no facts that

27  would enable it to prove that its charges satisfy the factors set forth in section

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

1300.71.  For example, Prime has pled no facts specifying the nature of the services it provided to UHC's members, the fees it usually charges for those services, or the prevailing provider rates in the geographic area Prime serves.  Second, the DMHC itself has made clear that section 1300.71 does not establish the appropriate compensation rates for non-contracted providers, and has conceded that the DMHC does not have authority to set such rates.  *See Children's Hospital*, 226 Cal. App. 4th at 1273-74 (discussing DMHC confirmation that it "lacks the authority to set specific reimbursement rates under theories of *quantum meruit* and the jurisdiction to enforce a reimbursement determination").   Third, California authorities interpreting section 1300.71 have specifically rejected the contention that section 1300.71 mandates the payment of billed charges.  *Id.* at 1275 (full billed charges "not determinative" of reasonable and customary value of services).  Fourth, under California law, the proper measure of the "reasonable and customary value" of Prime's services includes the full "scope of the rates accepted by or paid to [Prime] by other payors." *Id.* at 1277.  Prime's Complaint is devoid of any facts about what it is paid by or accepts from others.  For each of these reasons, Prime's invocation of section 1300.71 is not enough to alchemize the allegations of Prime's vague and generalized Complaint into any cognizable claim.

The same thing is true of Prime's repeated references to the Insurance Code. Prime cites Insurance Code sections 10123.13 and 10123.147, but those sections merely define "prompt payment" requirements for companies subject to the Insurance Code and make them applicable to claims for emergency services. Similarly, Prime's Complaint purports to rest its claim in part on Insurance Code section 10133, but that section merely authorizes disability insurers to make payments directly to providers upon the insured's written consent.  None of these sections require UHC to pay Prime its full billed charges.  Indeed, none even purport to define the reasonable value of a non-contracted provider's services.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

Thus, as with Prime's claims for additional reimbursement under products subject to the Knox-Keene Act, Prime must actually plead (and, ultimately, prove) facts sufficient to establish the reasonable value of its services. *Children's Hosp.*, 226 Cal. App. 4th at 1273-74. It has failed to do so.

For all of these reasons, the Complaint fails to plead facts that, if proven, would be sufficient to support Prime's claims. In addition, the authorities cited by Prime do not support the legal theory on which its claims rest. The Complaint therefore fails to state a claim for relief, and accordingly should be dismissed.

## II.   PRIME'S CLAIMS ARE PREEMPTED BY FEDERAL LAW TO THE EXTENT THAT THEY INVOLVE SERVICES RENDERED TO UHC's MEDICARE ADVANTAGE MEMBERS.

### A.   Federal Law Governs Medicare Advantage Plans.

Traditionally, individuals eligible for Medicare received benefits directly from the federal government, through what commonly is referred to as Medicare Part A (hospital insurance) and Medicare Part B (medical insurance). Under traditional Medicare, the government pays health care providers and facilities on a fee for service basis for the services they render to Medicare Beneficiaries. 42 U.S.C. §§1395d, 1395k. These payments are based on a Medicare Fee-For-Service ("FFS") fee schedule. 42 U.S.C. §§ 1395g, 1395l.

In 1997, Congress created the Medicare + Choice program. Medicare + Choice later was renamed "Medicare Advantage." Known as Medicare Part C, the Medicare Advantage Program creates a private insurer alternative to Medicare Parts A and B.[1]

---

[1] Congress also subsequently created Medicare prescription drug benefit coverage,

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

Under Medicare Part C, eligible individuals may elect to receive Medicare benefits directly from a private health plan, such as UHC, in lieu of receiving direct benefits from the federal government.  42 U.S.C. §§ 1395w-21, 1395w-22(a).  The MA program pays MA organizations such as UHC on a monthly basis for Medicare beneficiaries who enroll in the plan, regardless of the services that beneficiary utilizes. 42 U.S.C. §§ 1395w-21, 1395w-23 & 1395w-24.  This "per member" method of payment transfers the risk of patient care from Medicare to the MA organization.  Because the MA organization receives the same payment regardless of the number of times the patient needs care, Medicare's financial exposure is limited.

The Medicare Act contains a broad express preemption provision:

> Relation to State laws: The standards established under this part **shall supersede any State law or regulation** (other than State licensing laws or State laws relating to plan solvency) **with respect to MA plans** which are offered by MA organizations under this part.

*See* 42 U.S.C. § 1395w-26(b)(3) (emphasis added).

### B.   Prime's Allegations Challenge UHC's Medicare Payments.

Prime is a non-contracted provider of emergency medical services. Complaint, ¶¶ 7, 16.  In its Complaint, Prime alleges that "beginning on or about May 2013 and continuing thereafter," Prime provided health care services emergency medical services to UHC's members. Complaint, ¶ 8. These "health care services" consisted of "emergency services, post-stabilization services, and other services."  Compliant, ¶ 14.  Prime contends that, although it billed UHC the amounts it believed to be "the reasonable value of the emergency services provided" – which it calculated as "100% of [Prime's] standard undiscounted rates" – UHC did not reimburse Prime for the reasonable value of the emergency services

known as Medicare Part D

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

1    it provided. Complaint, ¶¶ 14, 16.  As a result, Prime asserts that UHC violated the

2    provisions of the Knox-Keene Act (Cal. Health & Safety Code §§ 1371, 1371.35,

3    1371.4), as well as provisions of the California Insurance Code. Complaint, ¶¶ 9-

4    11.

5            Prime first sued UHC in state court, asserting causes of action for *quantum*

6    *meruit*, unfair competition pursuant to California Business & Professions Code

7    section 17200, breach of contract (third party beneficiary), breach of contract

8    (assignment from members), and breach of the covenant of good faith and fair

9    dealing.

10           UHC removed the action to federal court based on diversity jurisdiction and

11   based on federal question and federal officer jurisdiction.  *See* Docket Entry No. 1.

12

13   **C.      CMS's Federal Guidelines Govern The Payment Obligations Of**

14           **All Medicare Advantage Plans.**

15           All Medicare Advantage ("MA") programs are subject to pervasive oversight

16   and review by the Centers for Medicare & Medicaid Services ("CMS").  CMS is

17   the agency within the Department of Health and Human Services that administers

18   the MA program.  In particular, Medicare Advantage organizations, such as UHC,

19   operate pursuant to comprehensive and detailed regulations promulgated by CMS

20   and their contract with CMS.  *See, e.g.,* 42 C.F.R. §§ 422.1 *et. seq.*, 422.504

21   (identifying the basis, scope, and requirements of the contract between CMS and

22   Medicare Advantage organizations).  Accordingly, the benefits available to

23   Medicare Advantage members – which include the payments made on their behalf

24   for medical services they receive – are determined by the federal government's

25   program as administered by CMS.

26           The Medicare Act requires Medicare Advantage plans (like UHC) to cover

27

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-8-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

emergency services provided by non-contracted providers (like Prime).[2]  42 U.S.C. § 1395w–22(d)(1)(E).  And the Medicare Act likewise requires that non-contracted providers who provide services to MA members "must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare."  42 C.F.R. §422.214.  *See also* 42 C.F.R. §§ 422.250 and 417.558.  In other words, under CMS's mandate, an MA plan generally satisfies its payment obligations for services furnished by a non-contracting provider if it pays the provider an amount the provider would have been entitled to collect under traditional (or "original") Medicare. *See* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/mc86c04.pdf, Medicare Managed Care Manual, Ch. 4 - Benefits and Beneficiary Protection, Section 110.1.3, "Services For Which MA Plans Must Pay Non-Contracted Providers And Suppliers."

In the event a non-contracting provider wants to challenge a payment it has received from a Medicare Advantage provider, CMS regulations set forth an administrative appeal process that allows a provider to request an organization determination "with respect to ... (1) Payment for … emergency services, post-stabilization care, or urgently needed services." 42 C.F.R. § 422.566(b)(1) (organization determinations).  After the MA organization renders its organization determination regarding payment, any party to the organization determination may seek reconsideration of the organization determination. *Id*. § 422.582 (request for a

---

[2]  CMS defines "non-contracted provider or supplier" as follows: "For [private fee for service] PFFS plans, a non-contracted provider would be one who provided emergency services to a MAO plan member without first reading and agreeing to the MAO Plan's Terms & Conditions. For all other MAO plans, a provider is considered non-contracted when there is not a signed contract/agreement between the provider and the specific MAO plan (HMO, PPO, etc). For example, a provider may be contracted under a MAO's HMO plan, but be considered non-contracted for services rendered to a PPO plan member." *See, e.g.,* https://www.cms.gov/medicare/health-plans/healthplansgeninfo/downloads/pdrc_process_manual-.pdf at p. 3.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

1  standard reconsideration).  After reconsideration of the determination, any party to

2  the reconsideration may request a hearing before an administrative law judge

3  ("ALJ").  *Id.* § 422.600 (right to a hearing). After the ALJ renders a decision, any

4  party to the hearing may request a review by the Medicare Appeals Council. *Id*. §

5  422.608 (Medicare Appeals Council Review).

6       Only *after* the Medicare Appeals Council makes its final decision can a party

7  seek judicial review in federal court. 42 U.S.C. § 405(g); 42 U.S.C. § 1395w–

8  22(g)(5); 42 C.F.R. § 422.612(c) (judicial review).

9

10  **D.    The Medicare Act Requires Prime To Exhaust Its Administrative**

11        **Remedies Before Seeking Recourse In Court, And Prime's Claims**

12        **Should Be Dismissed Because It Has Not Done So.**

13       The Medicare Act and its implementing regulations restrict judicial

14  jurisdiction over claims that arise under the Act to those that properly have been

15  appealed from a final administrative decision. Specifically, the Medicare Act

16  provides that 42 U.S.C. § 405(g) is "***the sole avenue*** for judicial review for claims

17  'arising under' the Medicare Act."  *Doctors Med. Ctr. of Modesto, Inc. v. Kaiser*

18  *Foundation Health Plan, Inc.,* 989 F. Supp. 2d 1009, 1013 (E.D. Cal. 2013), *citing*

19  *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); 42 U.S.C. § 1395ii.  The "arising

20  under" language is "quite broad" and includes "any claims in which both the

21  standing and the substantive basis" for the claim is the Medicare Act.  *Heckler v.*

22  *Ringer*, 466 U.S. 602, 615 (1984).

23       The Supreme Court has held that "the exhaustion requirement of § 405(g)

24  consists of a non-waivable requirement that a claim for benefits shall have been

25  presented to the Secretary [of Health and Human Services], and a waivable

26  requirement that the administrative remedies prescribed by the Secretary be pursued

27  fully by the claimant." *Heckler*, 466 U.S. at 617.  Only once the Secretary has

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

1  issued a "final decision" may the individual seek judicial review of that

2  determination. *Id*. at 605. A "final decision" is rendered only after the individual

3  has "pressed his claim" through all levels of administrative review. *Id.*  Thus,

4  "[j]urisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. §

5  405(g), which requires an agency decision in advance of judicial review." *See*

6  *Uhm*, 620 F. 3d at 1140-41.

7          As the U.S. Supreme Court, the Ninth Circuit, and other federal circuit courts

8  have recognized, the "Medicare statute demands the 'channeling' of virtually all

9  legal attacks through the [Department of Health and Human Services] before a

10  health care provider may seek judicial review of a claim arising under the Medicare

11  statute.  This 'nearly absolute channeling requirement.... serves important

12  governmental interests in administrative efficiency and judicial economy." *Lifestar*

13  *Ambulance Serv. Inc. v. U.S.,* 365 F.3d 1293, 1296 (11th Cir. 2004) (internal

14  citations omitted); *Heckler*, 466 U.S. at 615; *Doctors Med. Ctr. of Modesto*, 989 F.

15  Supp. 2d at 1015.

16          As a result, courts in the Ninth Circuit routinely have dismissed lawsuits,

17  pursuant to FRCP 12(b)(1), that assert claims "arising under" the Medicare Act on

18  the grounds that they must first be brought through the Health and Human Services

19  administrative review process before they can be taken to federal court.  In *Kaiser*

20  *v. Blue Cross of California*, 347 F.3d 1107, 1111-14 (9th Cir. 2003), for example,

21  the Ninth Circuit affirmed the District Court's dismissal of a Medicare provider's

22  common law and constitutional claims under Rule 12(b)(1) because the provider

23  had not exhausted administrative remedies.  Similarly, in *Uhm*, 620 F. 3d at 1144,

24  the Ninth Circuit held that the court lacked jurisdiction to hear plaintiffs' claims for

25  breach of contract and unjust enrichment because they arose under the Medicare

26  Act, and plaintiffs should have exhausted their claims for benefits through the

27  coverage determination or grievance process before seeking review under 42 U.S.C.

28

Hogan Lovells US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-11-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

§ 405(g). *See also Bass v. Social Sec. Admin.*, 872 F. 2d 832, 833 (9th Cir. 1989) (plaintiff must meet all statutory prerequisites for litigating the federal claim, such as exhaustion of administrative remedies; *Doctors Med. Ctr. of Modesto*, 989 F. Supp. 2d at 1013-14; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The requirement of administrative exhaustion compels dismissal of Prime's claims here. Prime's Complaint alleges no facts showing that it exhausted its administrative remedies. Indeed, Prime's Complaint says nothing about pursuing administrative remedies at all. The Complaint certainly pleads no facts sufficient to show that it pursued those administrative remedies to a final decision. This failure is alone is fatal to Prime's claims.

In addition to the shortcomings in Prime's Complaint, however, this Court also may consider evidence beyond the Complaint itself. In considering a motion to dismiss under Rule 12(b)(1), unlike a motion under Rule 12(b)(6), the Court is not constrained by the pleadings. *Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000) (the court may consider affidavits, testimony, or any other evidence properly before the court in determining whether it has jurisdiction). *See also Tenet Healthsystem GB, Inc. v. Care Improvement Plus,* ---F. Supp. 3d ---, No. 1:15-cv-1922-WSD, 2016 WL 590222, *2 (N.D. Ga. Feb. 11, 2016) (in a "factual attack" on subject matter jurisdiction, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not apply). Thus, a court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See, e.g., Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1072-73 (N.D. Cal. 2012).

1    Here, the Court has before it the declaration of Gretchen Hess submitted in
2  support of UHC's Notice of Removal.  Ms. Hess's declaration establishes that UHC
3  offers Medicare Advantage plans, that some of UHC's members are Medicare
4  Advantage enrollees, and that Prime provided services to those enrollees.  *See*
5  Docket No. 1-5 (Ex. E), Declaration of Gretchen Hess ("Hess Decl."), ¶¶ 2, 3.

6    In its Complaint, Prime admits it is a non-participating provider and does not
7  have a contract with UHC. Complaint, ¶ 7.  Thus, UHC's payment obligations to
8  Prime for services rendered to Medicare Advantage members are dictated by the
9  Medicare Act and CMS's regulations for paying non-contracted emergency
10 providers.  *See* 42 C.F.R. §§422.214, 417.558 and 422.520.  For this reason, to the
11 extent they are based on underlying medical services rendered to UHC's Medicare
12 Advantage members,  Prime's claims are "inextricably intertwined" with a claim
13 for Medicare benefits, and must be administratively exhausted before they are
14 presented to the District Court for review.  *See, e.g., Doctors Med. Ctr. of Modesto*,
15 989 F. Supp. 2d at 1014-15 (holding non-contracted hospital's claims for
16 reimbursement for emergency medical services are "inextricably intertwined" with
17 the Medicare Act and are subject to exhaustion requirements).  Prime's Complaint
18 does not even allege that Prime has pursued administrative remedies, much less that
19 it has exhausted them.  This is an additional compelling reason why Prime should
20 be required to identify the specific claims and types of coverage at issue.  Prime
21 should not be able to evade preemption simply by its strategic silence about the
22 type of claims at issue.

23    Accordingly, Prime's Complaint should be dismissed because this Court
24 lacks subject matter jurisdiction to hear Prime's claims until after Prime has
25 pursued its administrative remedies under the Medicare Act. 42 U.S.C. § 405(g); 42
26 U.S.C. § 1395w–22(g)(5); 42 C.F.R. § 422.612(c).  *See Assocs. Rehab. Recovery,*
27 *Inc. v. Humana Med. Plan,* 76 F. Supp. 3d 1388, 1390-91, 1393 (S.D. Fla. 2014)

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-13-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

1   (dismissing suit for payment of Medicare benefits to Medicare beneficiaries for lack

2   of subject matter jurisdiction where plaintiff was first required to exhaust the

3   administrative remedies of the Medicare Act); *Tenet*, 2016 WL 590222 at *5

4   (dismissing complaint for lack of subject matter jurisdiction where non-contracting

5   provider failed to exhaust its administrative remedies prior to bringing suit).

6

7   **E.   THE MEDICARE ACT PREEMPTS ALL OF PLAINTIFF'S STATE LAW CLAIMS.**

8

9   Prime's Complaint also should be dismissed under FRCP 12(b)(6) on a

10  second, independent basis – all of its claims are preempted by the Medicare Act.  If

11  a claim is preempted by federal law, it fails to state a claim upon which relief can

12  be granted under Rule 12(b)(6).  *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 957-58

13  (9th Cir. 2002); *In re Apple iPhone 3G Prods. Liab. Litig.*, 728 F. Supp. 2d 1065

14  (N.D. Cal. 2010) (dismissing a complaint on preemption grounds for failure to state

15  a claim on which relief could be granted); *Kent v. DaimlerChrysler Corp.*, 200 F.

16  Supp. 2d 1208, 1212 (N.D. Cal. 2002) ("Where a state law claim is preempted by

17  federal law, that claim must be dismissed for failure to state a claim because the

18  claimant cannot prove any set of facts that will support the claim for relief.").

19  Under the Supremacy Clause, Article VI, Clause 2, of the U.S. Constitution,

20  federal law preempts state law if the "clear and manifest purpose of Congress" is to

21  displace state law.  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  The

22  best evidence of Congress's preemptive intent is the language of the preempting

23  statute.  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

24  The Medicare Advantage statute contains one of the broadest preemption

25  provisions in federal jurisprudence:

26  The standards established under [the MA statutes] ***shall***

27  ***supersede any State law or regulation*** (other than State

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-14-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

licensing laws or State laws relating to plan solvency)

***with respect to MA plans*** which are offered by MA

organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (emphasis added).  Thus, with narrow exceptions that do not apply here, the Medicare Act preempts state laws that purport to regulate the broad field that the MA statutes and regulations govern.  Similarly, federal regulations, such as those promulgated by CMS with respect to a Medicare Advantage organization's payment obligations to non-contracted providers, have the same preemptive power as federal statutes.  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.").

The Ninth Circuit and the federal district courts within this circuit that have considered the Medicare Act's preemption provision read the language broadly to preempt state law provisions, including state consumer protection statutes.  *See Uhm*, 620 F.3d at 1151-52; *Phillips v. Kaiser Found. Health Plan*, Inc., 953 F. Supp. 2d 1078 (N.D. Cal. 2011).  In *Uhm*, the Ninth Circuit noted that application of state consumer protection laws to claims regarding MA organization marketing "could potentially undermine the [Medicare] Act's standards as to what constitutes non-misleading marketing" materials, and stated that this inconsistency "is precisely the situation that both the current version of the Act's preemption provision as well as its previous incarnations contemplated and sought to avoid." 620 F.3d at 1152.  Accordingly, the Ninth Circuit determined that all of plaintiffs' state consumer protection claims and fraud claims were preempted. *Id.*  The Court reached the same result in *Phillips*, and dismissed plaintiff's state law claims with prejudice.  953 F. Supp. 2d at 1089-90.

Because Prime is a non-contracting provider under the MA program, Medicare regulations – not a contract between the parties – provide the standards

governing UHC's payment obligations to Prime, and Prime's reciprocal obligation to accept those payments. *See* 42 U.S.C. § 1395w–22(d)(1)(E); 1015 42 C.F.R. §§ 422.214.  *See also Doctors Med. Ctr. of Modesto,* 989 F. Supp. 2d at 1013 (finding that MA organization's payment obligation with respect to non-contracting hospitals "turns on" Medicare Act and CMS regulations); *Tenet,* 2016 WL 590222, at *2 ("The Medicare Act requires MA plans to cover emergency services provided by non-contracted providers…."); *New York City Health and Hosps. Corp. v. WellCare of New York, Inc.,* 769 F. Supp. 2d 250, 258 (S.D.N.Y. 2011) (because there is no contract, "reimbursement is governed by a complex federal regulatory scheme").  Thus, Prime's state law claims based on the allegation that UHC "systematically based its reimbursements on artificially deflated values of what it purported to be reasonable and customary rates" (Complaint, ¶ 8) are expressly preempted by the federal standards governing a Medicare Advantage organizations payment obligations to a non-contracting hospital. *See, e.g., Doctors Med. Ctr. of Modesto,* 989 F. Supp. 2d at 1013; *Tenet*, 2016 WL 590222 at *2 ("Payment amounts due to a non-contracted emergency provider are limited to what 'the provider would collect if the beneficiary were enrolled in original Medicare.'" *citing* 42 C.F.R. §422.214(a)).

Accordingly, for this additional reason, each of Prime's state law claims should be dismissed.

## III.    PRIME'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Prime's Complaint also should be dismissed on the grounds that it fails to plead facts sufficient to establish any of its state law causes of action as a matter of law.

A pleading may be dismissed pursuant to FRCP 12(b)(6) if a party fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

1  *Corp.*, 550 U.S. at 570.  Material factual allegations are taken as true and construed

2  in the light most favorable to the nonmoving party, but the court need not accept

3  conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.

4  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Sprewell v.*

5  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Twombly*, 550 U.S. at

6  561 ("a wholly conclusory statement of [a] claim" will not survive a motion to

7  dismiss).  A pleading that offers "labels and conclusions," "a formulaic recitation of

8  the elements of a cause of action," or "naked assertions devoid of further factual

9  enhancement" will not survive a motion to dismiss.  *Ashcroft*, 556 U.S. at 678,

10  (internal citations omitted).  Prime's Complaint falls short under Rule 12(b)(6)

11  because it alleges facts that, even if true, fail to state a claim for relief against UHC.

12

13  **A.**  **Prime's Cause Of Action For Violations of Business & Professions**

14  **Code Section 17200 Fails To Allege That UHC's Acts Were**

15  **Unlawful, Unfair, Or Fraudulent.**

16  To state a claim for relief under California Business & Professions Code

17  section 17200 (the "UCL"), Prime must allege facts that, if proven, would show

18  that UHC acted unlawfully, unfairly, or fraudulently.  *See, e.g.*, *Berryman v. Merit*

19  *Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).  Prime's Complaint fails

20  to do so.

21  **1.**  **None Of The Conduct Alleged By Prime Is Unlawful.**

22  It is well established that a violation of another law is a predicate for stating a

23  cause of action under the UCL's "unlawful" prong.  *Berryman*, 152 Cal. App. 4th at

24  1554.  A plaintiff may not obtain relief under the UCL if its unfair competition

25  claim is predicated on a purported violation of a statute that did not in fact occur.

26  *See, e.g.*, *Maystruk v. Infinity Ins. Co.*, 175 Cal. App. 4th 881 (2009) (affirming

27  demurrer where the complaint failed to allege a claim for a violation of a statute and

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-17-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

consequently the claim for unfair competition premised on the violation of this statute was rendered moot); *Berryman*, 152 Cal. App. 4th at 1554-55 (sustaining defendants' demurrer on plaintiff's UCL claim without leave to amend where, although plaintiffs had alleged that defendants violated several statutes to support unfair competition claim, the complaint failed to plead facts to support allegations that defendants actually had violated those statutes).

Prime alleges that UHC violated the Knox-Keene Act and the Insurance Code by failing  to reimburse providers for emergency services provided to the plan's members by failing to pay its full billed charges for the services provided. Complaint, ¶¶ 8, 13-14, 16-18, 20-22.  Prime is wrong.  As discussed, neither the Knox-Keene Act nor the Insurance Code requires UHC to pay Prime's full billed charges, and the Complaint pleads no facts that would enable Prime to prove its "reasonable and customary" rates.  Moreover, UHC did not violate ***any*** state statute with respect to underlying claims for services rendered to Medicare Advantage members because it is obligated to reimburse Prime in accordance with CMS's federal guidelines and regulations governing payments to non-contracted emergency services providers, and Prime is obligated to accept those payments "in full." *See* 42 U.S.C. § 1395w–22(d)(1)(E); 1015 42 C.F.R. §§ 422.214.  Thus, to the extent Prime relies on the Knox-Keene Act or Insurance Code to regulate UHC's payment obligations for services rendered to Medicare Advantage members, the Knox-Keene Act is inapplicable and Prime's claims in any event are preempted by the Medicare Act.  *See, e.g., Hewlett-Packard Co. v. Barnes*, 571 F.2d 502, 504 (9th Cir. 1978) (holding that ERISA preempts California's Knox-Keene Act to the extent Knox-Keene seeks to regulate ERISA covered employee benefit plans).

Moreover, even if UHC's payments to Prime were not subject to the Medicare Act, Prime's allegations still would not give rise to a cause of action for violations of unfair competition under state statutes. *See, e.g., Congress of*

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

-18-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

1  *California Seniors v. Catholic Healthcare West*, 87 Cal. App. 4th 491, 511 (2001)

2  (holding that even if the regulation of Medi–Cal cost reporting and reimbursement

3  were not preempted by federal law and even if hospital's conduct could somehow

4  be construed as violative of federal law, state court injunctive relief under the

5  theory of unfair competition was inappropriate).  Thus, Prime's claims for

6  violations of California's Knox-Keene Act fail, and its claim premised on the

7  "unlawful" prong of the UCL also fails. *See Ingels v. Westwood One Broad. Servs.*,

8  Inc., 129 Cal. App. 4th 1050, 1060 (2005) (affirming the trial court's holding that,

9  "If the [underlying] claim is dismissed, then there is no 'unlawful' act upon which

10  to base the derivative Unfair Competition claim."); *Pantoja v. Countrywide Home*

11  *Loans, Inc.,* 640 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009) (dismissing UCL

12  claim because court dismissed "all ... predicate violations").

13
14  **2.      None Of The Conduct Alleged By Prime Is Unfair As A Matter of Law.**

15  An unfair business practice under the UCL is "one that either offends an

16  established public policy or is immoral, unethical, oppressive, unscrupulous or

17  substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498,

18  506 (9th Cir. 2008) (omitting internal citations).  To test whether a business

19  practice is unfair, the court must weigh the utility of the defendant's conduct

20  against the gravity of the harm to the alleged victim.  *Bardin v. Daimlerchrysler*

21  *Corp.*, 136 Cal. App. 4th 1255, 1268 (2006) (affirming demurrer to UCL claim

22  where plaintiff did not prove that defendant's act offended public policy).

23  Prime cannot establish a UCL violation based on the "unfair" prong of the

24  statute as a matter of law because it has failed to allege any facts showing that the

25  amounts UHC paid Prime were less than it was obligated to pay.  Absent facts that,

26  if proven, could substantiate this allegation, Prime's Complaint fails to allege any

27  public policy violation that can provide the basis for a UCL claim under the

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-19-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
\\LA - 086335/000488 - 1268199 v1

"unfair" prong. *Bardin*, 136 Cal. App. 4th at 1272-73. Prime's claim is further defective because it not only fails to reference any established public policy that UHC's actions purportedly violated, it also does not allege that UHC's conduct is immoral, unethical, oppressive, or unscrupulous. Thus, Prime fails to state a claim under the "unfair" prong of the UCL for this reason as well. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

### 3.    Prime Does Not Allege That UHC's Conduct Is Fraudulent.

To state a claim under the fraudulent prong of the UCL, a plaintiff must show that members of the public are likely to be deceived by the business practice at issue. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Here, Prime has not alleged that UHC's business practices are fraudulent, or that members of the public are likely to be deceived by them. Accordingly, Prime has failed to state a claim under the "fraudulent" prong of the UCL. *Bardin*, 136 Cal. App. 4th at 1275 (complaint failed to state a cause of action based on the "fraud" prong of the UCL where plaintiff failed to plead any facts demonstrating that the public had an expectation or an assumption about the materials used in a Chrysler vehicle).

### B.    Prime's Complaint Fails To State A Claim For Quantum Meruit.

Prime's claim for *quantum meruit* fails to state a claim because, as discussed, the Complaint pleads no facts that could establish the reasonable value of Prime's services. Establishing that reasonable and customary value, through facts showing the fees Prime receives and accepts from other payors, is the *sine qua non* of a *quantum meruit* claim. Because the Complaint does not contain facts which, if true, could prove its claim, Prime's *quantum meruit* claim fails.

Moreover, with respect to Medicare claims, Prime's claim also fails as a matter of law because UHC reimburses Prime according to the Medicare fee schedule set forth in the Medicare Act. "A quantum meruit or quasi-contractual

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

\\LA - 086335/000488 - 1268199 v1

recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice.... However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." *Hedging Concepts, Inc. v. First Alliance Mortg. Co*., 41 Cal. App. 4th 1410, 1419 (1996).  Notably, a *quantum meruit* analysis cannot supply "missing" terms that are not missing. *Id.*

Although Prime and UHC do not have an actual agreement covering compensation, the Medicare Act sets forth a Medicare Advantage plan's reimbursement obligations for emergency services provided by non-contracted providers, like Prime.  Thus, there can be no "implied in law promise" for UHC to pay Prime a "reasonable value" for the services it rendered where, as here, federal regulations determine the amount of money owed for services rendered by Prime to UHC's members. *See, e.g., California Emergency Physicians Med. Grp. v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1137 (2003) (affirming dismissal of *quantum meruit* claim without leave to amend where the Legislature had specified the payment obligations in the situation at hand).

## C.    Prime's Claims For Breach of Contract And Breach Of The Covenant Of Good Faith And Fair Dealing Fail As A Matter of Law.

Although Prime alleges that it does not have a contract with UHC, it nevertheless asserts two breach of contract claims:  one claim is for breach of contract on the basis that it was a third-party beneficiary to the Evidence of Coverage ("EOC") that UHC entered into with its members, and the other is for breach of contract on the basis that UHC's members assigned their rights to insurance benefits to Prime. Complaint ¶¶ 26-27, 31.  Each fails.

Pursuant to California Civil Code section 1559, a "contract, made expressly

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-21-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  However, this section "excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it." *Martinez v. Socoma Cos/, Inc.*, 11 Cal. 3d 394, 400 (1974).

The law is clear that "third party beneficiary status" is a matter of contract interpretation.  *California Emergency Physicians Med. Grp.*, 111 Cal. App. 4th at 1138.  For that reason, "the contract must be set out in the pleadings." *Id.*  "A plaintiff must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary." *Id., citing Luis v. Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 441 (1962).  Here, Prime has failed to set out any specific policy language from the EOC's to demonstrate that it is an intended third party beneficiary of the contract between UHC and its members. *See* Complaint, ¶¶ 25-29. Rather, its conclusory allegations are based only on conjecture and unsupported assumptions. As such, Prime fails to state a claim for breach of contract – third party beneficiary.  *See, e.g., California Emergency Physicians Med. Grp.*, 111 Cal. App. 4th at 1138 (sustaining demurrer without leave to amend plaintiff's claim for breach of contract on third party beneficiary theory where plaintiff was a non-contracted provider and failed to plead contract between insurer and insured was made expressly for its benefit, or that it was an intended beneficiary).

Prime's allegations in support of its fourth cause of action, breach of contract – assignment from members – are similarly defective.  Prime alleges that each patient signs a Condition of Admissions form, in which the patient assigns "direct payment to [Prime] of all insurance benefits otherwise payable to or on behalf of the patient…, including for emergency services…at a rate not to exceed the hospital's actual charges."  Complaint, ¶ 31.  As a result of the Conditions of Admissions form, Prime alleges that it stands in the patient's shoes as to any

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

benefits to which the patient is entitled. Complaint, ¶ 31.  Even assuming this allegation is true, it means only that the patient assigned his alleged "right" to receive direct payments from UHC to Prime – nothing more.  *See, e.g., Whiteside v. Tenet Healthcare Corp.,* 101 Cal. App. 4th 693, 705-06 (2002).  Contrary to Prime's allegations, this so-called assignment does not convert Prime's claims against UHC into a breach of contract claim, as this purported "assignment" has nothing to do with UHC's alleged failure to pay Prime the full amount of its billed charges. UHC's payment obligations are dictated by the Medicare Act, regardless of whether Prime stands in the shoes of the member or not.

Given that Prime's pseudo-contract claims fail as a matter of law, so too does its fifth cause of action for breach of the covenant of good faith and fair dealing. Under California law, the covenant of good faith and fair dealing is implied into every contract, and exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.  *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000).  But there can be no breach of the implied covenant where, as here, there is no contract. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, (E.D. Cal. 2009) (dismissing claim for breach of the implied covenant where there was no contractual relationship between the parties).

Here, Prime admits it is a non-contracted provider.  Complaint, ¶ 32. As shown, Prime has failed to meet the elements that it is an intended third-party beneficiary of UHC's contracts with its members.  At best, all that remains is an allegation that Prime was assigned the right to receive payments directly from UHC, but that claim flounders on the fact that the Complaint is devoid of any allegation that UHC breached that obligation. Given that Prime has not alleged any

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

-23-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

\\LA - 086335/000488 - 1268199 v1

facts to support a claim for the breach of any underlying contract, the allegations in the Complaint fail to state a claim for the breach of the implied covenant of good faith.

### CONCLUSION

Prime has failed to plead facts sufficient to support its claims, failed to identify any authorities to support its legal theory, and failed to come to grips with or even acknowledge the fact that Medicare preemption may bar most of the relief it seeks.  For all the foregoing reasons, UHC respectfully requests that this Motion be granted, and that the Complaint be dismissed with prejudice.

Dated:    September 12, 2016               HOGAN LOVELLS US LLP
                                            MICHAEL M. MADDIGAN
                                            POOPAK NOURAFCHAN


                                            By: /s/ Michael M. Maddigan, Esq.
                                                Michael M. Maddigan
                                                Attorneys for Defendant UHC
                                                Health Plan

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

\\LA - 086335/000488 - 1268199 v1