Troy A. Schell, Esq. (SBN 208661)
Bryan Wong, Esq. (SBN 205573)
Sepand Akhavanhaidary (213595)
John Nuelle, Esq. (SBN 217075)
Oliver Tomas, Esq. (SBN 233807)
3300 East Guasti Road, 3rd Floor
Ontario, California 91761
Telephone: (909) 235-4400

Attorneys for Prime Healthcare Services – Shasta, LLC
d.b.a Shasta Regional Medical Center

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

PRIME HEALTHCARE
SERVICES – SHASTA, LLC., a
Delaware corporation doing business
as Shasta Regional Medical Center;

        Plaintiff

vs.

UNITED HEALTHCARE
SERVICES, INC., a Minnesota
corporation licensed to do business
in California; and DOES 1 through
100, Inclusive

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:16-cv-01773-KJM-CKD

PLAINTIFF PRIME
HEALTHCARE SERVICES –
SHASTA, LLC, dba SHASTA
REGIONAL MEDICAL CENTER'S
OPPOSITION TO DEFENDANT
UNITED HEALTHCARE
SERVICES, INC.'S MOTION TO
DISMISS

Date: November 4, 2016
Time: 10:00 am
Courtroom: 3

1

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………..5

II.   UHC'S MOTION TO DISMISS MUST BE VACATED AND/OR
      DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER
      JURISDICTION OVER THIS CASE …………………………………6

      A.    The Medicare Act Does Not Preempt the Causes of Action Alleged
            By Plaintiff ………………………………………………………7

            1.    Ordinary Preemption Does Not Apply To SRMC's
                  Claims………………………………………………………..7

                  a.    No Conflict Establishes Preemption of SRMC's
                        Claims……………………………………………………7

                  b.    The Statutes On Which UHC Relies Do Not Regulate
                        The Relationships Between Providers and MA
                        Organizations…………………………………………..8

      B.    SRMC Is Not Required To Exhaust Administrative Remedies…    11

III.  SRMC SHOULD BE GRANTED LEAVE TO AMEND ITS
      COMPLAINT IF THE COURT GRANTS THE MOTION TO
      DISMISS................................................................................................ 14

IV.   CONCLUSION………………………………………………………...16

2

1

<u>**TABLE OF AUTHORITIES**</u>

<u>Federal Cases</u>

*American Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348
    (8th Cir. 2013)……………………………………………………..............15

*Bodimetric Health Servs. V. Aetna Life & Casualty*, 903 F.2d 480, 484
    (7th Cir. 1990)………………………………………………………….7, 10

*Doctors Medical Center of Modesto v. Kaiser Foundation Health Plan*,
    989 F. Supp. 2d 1009 (E.D. Cal. 2013)…………………………….. 11

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051
    (9th Cir. 2003)…………………………………………………………15

*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)………………………..6

*Heckler v. Ringer*, 446 U.S. 602, 606 (1984)…………………………………5

*Lone Star Ladies Invest. Club v. Schlotzksy's Inc.*, 238 F.3d 363, 367
    (5th Cir. 2001)…………………………………………………………15

*Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090
    (9th Cir. 2003)…………………………………………………………6

*McCall v. PacifiCare of Cal., Inc.*, 25 Cal.4th 412, 416 (2001)…..........*passim*

*Medical Card System, Inc. v. Equip Pro Convalecencia*, 587 F. Supp. 2d 384
    (D. Puerto Rico 2008)…………………………………………….. *passim*

*Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993)……………………..15

*Pagarigan v. Superior Court*, 102 Cal. App. 4th 1121, 1146-49
    (2002)…………………………………………………………… 7, 10

*RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555
    (5th Cir. 2004)…………………………………………… *passim*

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003,
    1012 (1998)…………………………………………………………..6

3

*Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013)……………………………………………………3, 15

*Toumajian v. Frailey*, 135 F.3d 648, 652-653 (9th Cir. 1998)……………… 6

*Uhm v. Humana, Inc.*, 540 F.3d 980 (9th Cir. 2008)………………………… 7

*Yarick v. PacifiCare of California*, 179 Cal. App. 4th 1158, 1167 (2009)…... 7

*Zolezzi v. PacifiCare of California*, 105 Cal. App. 4th 412, 416 (2003)……. 5


<u>State Cases</u>

Christus Health Gulf Coase v. Aetna, Inc., 237 S.W.3d 338, 344 (2007)…….14


<u>Statues</u>

42 U.S.C. § 1395w-21…………………………………………………..1, 8

42 U.S.C. § 1395w-23(a) …………………………………………………… 9

42 U.S.C. § 1395w-26(b)(3)…………………………………………………..7

Fed. Rules of Civ. Proc. Rule 15(a)(2)………………………………………14


<u>Regulations</u>

42 C.F.R. § 422.1……………………………………………………….. 1

42 C.F.R. § 422.250……………………………………………………….. 8

42 C.F.R. § 422.300……………………………………………………….. 9

42 C.F.R. § 422.504(g)…………………………………………………… 8

42 C.F.R. § 422.562(c)(2)…………………………………………………..13

42 C.F.R. § 422.566…………………………………………………….......13

42 C.F.R. § 422.566(b)(3)…………………………………………………...13

**PLAINTIFF PRIME HEALTHCARE SERVICES – SHASTA, LLC, dba SHASTA REGIONAL MEDICAL CENTER'S OPPOSITION TO DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS**

## I.    **INTRODUCTION.**

The overwhelming weight of authority establishes that Medicare does not preempt Plaintiff Prime Healthcare Services - Shasta, LLC *dba* Shasta Regional Medical Center (hereinafter "SRMC") claims for services provide to United Healthcare Services, Inc. (hereinafter "UHC") members and that no exhaustion requirement applies to SRMC's state claims.  These issues are resolved against UHC by numerous cases, most notably *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555 (5th Cir. 2004), *Medical Card System, Inc. v. Equip Pro Convalecencia*, 587 F. Supp. 2d 384 (D. Puerto Rico 2008), *McCall v. PacifiCare of Cal., Inc.*, 25 Cal.4th 412, 416 (2001), and *Zolezzi v. PacifiCare of California*, 105 Cal. App. 4th 412, 416 (2003).

In *RenCare*, a health care provider rendered services to members of a Medicare + Choice ("M+C") organization, now known as a Medicare Advantage ("MA") organization,[1] and sued for payment.  *RenCare*, 395 F.3d  at 556-57.  The Court found no preemption, explaining that Medicare preemption arises where "'both the standing and the substantive basis for the presentation' of the claim is the Medicare Act, or the claim is 'inextricably intertwined' with a claim for Medicare benefits."  *Id*. at 557, quoting *Heckler v. Ringer*, 446 U.S. 602, 606 (1984) (citations omitted).  Because SRMC's claims are based on state law causes of action, "the standing and substantive basis is clearly not the Medicare Act."  *Id*. at 557.  SRMC's claims are not inextricably intertwined with a claim for Medicare benefits because, *inter alia*, the Complaint does not allege that SRMC is entitled to government funds.  *See RenCare*, 395 F.3d at 557.  SRMC seeks payment from UHC, not the already reduced fixed monthly payments that the Centers for Medicare and Medicaid Services ("CMS") disbursed to it under Medicare Part C. "With the government's risk extinguished, any dispute over payment to [SRMC] is

---

[1] 42 C.F.R. § 422.1 *et seq.*; Pub.L. 108-173, § 201, set out as a note under 42 U.S.C. § 1395w-21.

5

solely between [SRMC and UHC]." *See RenCare*, 395 F.3d at 559. "With neither [Medicare] enrollees nor the government having any financial interest in the resolution of this dispute, [SRMC's] claims are not intertwined, much less 'inextricably intertwined,' with a claim for Medicare benefits. At bottom, [SRMC's] claims are claims for payment pursuant to a contract between private parties." *Id.*

## UHC'S MOTION TO DISMISS MUST BE VACATED AND/OR DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE.

Federal courts must determine issues of subject matter jurisdiction before considering a case on its merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998). A "necessary and constitutional predicate for any decision" by any federal court is whether the court has subject matter jurisdiction over the dispute. *Toumajian v. Frailey*, 135 F.3d 648, 652-653 (9th Cir. 1998). "Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed." *Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). When a plaintiff moves to remand a case, the defendant bears the burden of establishing that removal was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any questions regarding the propriety of removal should be resolved in favor of the party moving for remand. *Matheson*, 319 F.3d at 1090. "Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed." *Id.*

As established in this Opposition, as well as in SRMC's pending Motion to Remand, the Court lacks subject matter jurisdiction in this case. This means that the Court does not even have the authority to hear UHC's motion to dismiss. As such, UHC's motion to dismiss must be vacated and/or dismissed.

6

## A. UHC admitted that Removal was Improper for Lack of Subject Matter Jurisdiction

UHC brought this motion under 12(b)(1), whereby arguing that there is a lack of Subject Matter Jurisdiction. However, the predominating issue centers on a State cause of action, since it involves a contractual relationship between third parties and UHC. Subject Matter Jurisdiction is two ways: Diversity Jurisdiction 28 U.S.C. § 1332 or a Federal Question 28 U.S.C. § 1331. Here, UHC alleges in its Notice of Removal that a federal question presides on this issue, therein evidencing that potentially a federal question presides this issue. Moreover, UHC admittedly states that the Court lacks subject matter jurisdiction to hear this case, which uproots its entire motion and makes it moot. (**Emphasis added**).

## B. The Medicare Act Does Not Preempt the Causes of Action Alleged By Plaintiff.

### a. *Ordinary Preemption Does Not Apply To SRMC's Claims.*

UHC argues that Medicare's express preemption provision supersedes any state law for which Medicare standards have been established. On the contrary, "the express language of the federal preemption statute, 42 [U.S.C.] 1395w-26(b)(3), only precludes application of 'positive state enactments' (*i.e.*, **statutes and administrative regulations**)." *Yarick v. PacifiCare of California*, 179 Cal. App. 4th 1158, 1167 (2009) (emphasis added). *See also Pagarigan v. Superior Court*, 102 Cal. App. 4th 1121, 1146-49 (2002) (field preemption does not apply and state standards are superseded only to the extent they are inconsistent with federal regulations); *Uhm v. Humana, Inc.*, 540 F.3d 980 (9th Cir. 2008) (holding there was "no field preemption" in case for Medicare benefits). Common law claims may be preempted only where they conflict with federal law. *Yarick*, 179 Cal. App. 4th at 1167.

7

### a) No Conflict Establishes Preemption of SRMC's Claims.

The Complaint does not allege application of state statutes or regulations, or common law actions that conflict with Medicare law. Neither the Medicare "standards" nor any other regulations UHC relies on are inconsistent with the contracts or causes of action alleged.

Even if *in arguendo* the Complaint does reference Medicare, UHC still would not be able to argue that SRMC's claims for payment are inextricably intertwined with a claim for benefits as a result of such reference. "[T]he Supreme Court has recognized that a party does not necessarily assert a claim under the Medicare Act merely by including the word 'Medicare' in his challenge." *Bodimetric Health Servs. V. Aetna Life & Casualty*, 903 F.2d 480, 484 (7th Cir. 1990); *McCall, supra*, 25 Cal.4th at 426 ("Because the McCalls may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations,... it follows that the Court of Appeal correctly reversed the trial court's orders sustaining defendants' demurrers without leave to amend." [**Emphasis added**]). Here, the Claims center on a contractual dispute arising out of UHC's inability to pay the remaining balance for services unquestionably provided to their enrollees.

### b) The Statutes On Which UHC Relies Do Not Regulate The Relationships Between Providers and MA Organizations.

The regulations and the other standards that UHC relies regulate **MA organizations** like UHC who contract with the federal government to provide or arrange for services to Medicare beneficiaries - **not disputes between MA Organizations and downstream providers**. *See RenCare*, 395 F.3d at 558-59; *Medical Card System*, 587 F.Supp.2d at 384. In *Medical Card System*, 587 F.Supp.2d at 386, Plaintiffs were MA organizations, like UHC, under Part C of the Medicare Act, 42 U.S.C. § 1395w-21 *et seq.* The MA organizations sued medical suppliers for violations of Medicare regulations and breach of contract. *Id*. The

8

suppliers successfully moved to dismiss the case on the ground that the federal court lacked jurisdiction because the MA organizations' claims were based exclusively on the contracts. *Id*. at 387. The MA organizations unsuccessfully asserted precisely the same preemption argument UHC makes here, *i.e.*, that Medicare Part C expressly preempts state law remedies. *Id*. The court found that Medicare **did not preempt** Plaintiffs' claims, ruling: "[T]he regulations Plaintiffs cite as standards are standards intended to regulate the behavior **of MA organizations, not of health care providers under contract with MA organizations.**" *Id*. at 388 (emphasis added), citing 42 C.F.R. § 422.504(g) (emphasis added).

The regulations apply to MA organizations like UHC because they contract with CMS to accept the government's responsibility and financial risk for providing and arranging services for Medicare Part C beneficiaries. *See, e.g.*, *RenCare*, 395 F.3d at 558-59; 42 C.F.R. § 422.250 *et seq*. That is, CMS pays MA organizations a fixed monthly payment for each person enrolled in the MA organizations' plan, in advance, regardless of what services were actually provided to the Medicare beneficiaries. 42 U.S.C. § 1395w-23(a); 42 C.F.R. § 422.300 *et seq*. "In return, the [MA][2] organization assumes responsibility and full financial risk for providing and arranging a specified range of healthcare services for [MA] beneficiaries, sometimes contracting with health care providers to furnish [such] services." *RenCare*, 395 F.3d at 559 (citations omitted). Under these circumstances, the MA organization bears ultimate responsibility and the government has no more interest - its risk is extinguished. *RenCare*, 395 F.3d at 559. Therefore, any dispute over payment is solely between the MA organization and the party with whom it arranges to provide services. *Id*. "With neither [Medicare] enrollees nor the government having any financial interest in the resolution of this dispute, [the providers'] claims are not

---

[2] *RenCare* refers to M+C, which is the predecessor to MA under Part C. 42 U.S.C. §§ 1395w-21-2395w-28.

9

PLAINTIFF PRIME HEALTHCARE SERVICES – SHASTA, LLC, dba SHASTA REGIONAL MEDICAL CENTER'S OPPOSITION TO DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS

intertwined, much less 'inextricably intertwined,' with a claim for Medicare benefits. At bottom, [the provider's] claims are claims for payment pursuant to a contract between private parties." *Id.*

UHC is an operator of MA Plans under Medicare Part C that entered into a contract with CMS to provide Medicare benefits to persons who choose to enroll in UHC's MA health care service plan. In exchange for providing covered Medicare benefits to its plan enrollees, CMS pays UHC a fixed amount per month for each plan enrollee. Accordingly, UHC is solely responsible to pay for services SRMC rendered to its enrollees, in that neither Medicare nor any enrollee was or could be subject to any further request for payment. There are no grounds for preemption. *RenCare*, 395 F.3d at 559.

UHC might attempt to distinguish *RenCare* by arguing that it only applies where a dispute depends on the terms of an express contract and that the *RenCare* court found that it did not need to look to the Medicare Act or regulations to resolve the dispute. *RenCare* says no such thing. Again, *RenCare* holds that **any** dispute over payment between an MA organization and a provider is solely between them because the government's risk is extinguished. *Id.* at 559. There is absolutely nothing in *RenCare* to suggest that the court found that it did not need to look to the Medicare Act to resolve the dispute.

Indeed, such a characterization of *RenCare* would wrongly assume that SRMC's claims are preempted if the terms of the contracts refer to Medicare law or payment schedules. This is not only contrary to specific case authority, as discussed above, *McCall*, 25 Cal.4th at 426; *Bodimetric*, 903 F.2d at 484, it would create a new category of preemption, which arises only in limited distinct, circumstances. *See, e.g.*, *Harris*, 514 F. Supp. 2d at 1289, 1294 n.13 (criticizing PacifiCare for "conflate[ing] the two doctrines" of ordinary and complete preemption.) Creating a new type of preemption or exhaustion requirement where a complaint or contract

refers to Medicare would also contravene the law that "It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. *Pagarigan v. Superior Court*, 102 Cal. App. 4th at 128 (citing U.S. Supreme Court cases).

In addition, SRMC expressly alleges in the Complaint facts that give rise to contracts implied in law or in fact between the parties. Specifically, in paragraphs 17 and 18 of the Complaint, which are re-alleged and incorporated under Plaintiff's other causes of action, Plaintiff alleges in that:

> … Plaintiff provided care to Defendants' members based on Defendants' express or implied authorization to treat the member. These instances include cases where Defendants either authorized care for services following the stabilization of an emergency condition or authorized pre-scheduled services….

> The statutory obligation to reimburse a provider, as well as Defendants' express or implied agreements to reimburse Plaintiff, created contracts implied in law or in fact, which required Defendants to pay Plaintiff's reasonable billed charges. Notwithstanding this duty, Defendants have failed and refused to pay Plaintiff's reasonable charges. Instead, Defendants have either not paid for the services at all or has paid less than the reasonable charges due to Defendants' systemic use of artificially deflated measures of reasonable and customary rates. Plaintiff is entitled to recover the reasonable value of its services as express in the billed charges presented to Defendants.

SRMC's case is synonymous with *RenCare* to the extent that the disputes between the parties are contractual in nature. There simply is no reason for the Court to not follow and apply the ruling in *RenCare* to this case.

Furthermore, the case *Doctors Medical Center of Modesto v. Kaiser Foundation Health Plan*, 989 F. Supp. 2d 1009 (E.D. Cal. 2013) – on which Defendant's rely in support of its Motion to Dismiss – is distinguishable from the

instant case. In *Doctors Medical Center*, the only causes of action at issue were open book account and account stated. *Id*. at 1014. Both are non-contract causes of action. In contrast, the disputes between the SRMC and UHC in the instant case are contractual in nature as evidence by SRMC's above-quoted factual allegations in the Complaint. Therefore, *Doctors Medical Center* does not apply to the instant matter. Rather, *RenCare* is the case that the Court should follow and apply here.

### b. SRMC Is Not Required To Exhaust Administrative Remedies.

SRMC's claims are not subject to the Medicare administrative process because SRMC's claims are not inextricably interconnected with a claim for benefits, *see RenCare*, 395 F.3d at 557, 560; *Medical Card System*, 587 F. Supp. 2d at 388; *McCall*, 25 Cal.4th 412, 416 (2001); *Zolezzi*, 105 Cal. App. 4th at 586-37, and "the Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers." *Medical Card System*, 587 F.Supp.2d at 388.

The administrative review process attendant to Medicare Part C "does not extend to claims in which an enrollee has absolutely no interest." *RenCare*, 395 F.3d at 559. The *RenCare* court ruled:

> As is evident from the regulations, the administrative review process focuses on enrollees, not health care providers, and is designed to protect enrollees' rights to Medicare benefits. Here, Humana's failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies. No enrollee has requested an organization determination or appeal. No enrollee has been denied covered service or been required to pay for a service. Rather, the M+C enrollees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement. In fact, there is a complete absence of M+C beneficiary interest in this dispute. The only interest at issue is RenCare's interest in receiving payment under its contract with Humana.

*Id*. Here, SRMC is not seeking to recover benefits or pursuing enrollee's or beneficiaries' claims through assignment or otherwise. The Complaint neither expressly or impliedly allege that Medicare beneficiaries are entitled to services or payment they did not receive, *i.e.*, coverage determinations – UHC enrollees have already received the services for which SRMC seeks reimbursement. *Id*.; *Zolezzi*, 105 Cal. App. 4th at 581-87. Accordingly, SRMC's claims are not subject to administrative review. *RenCare, supra*, 395 F.3d at 559-60, 567. This is a dispute between an MA organization, *i.e.,* UHC, and a health care provider, *i.e.*, SRMC. The Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers. *See also Medical Card System*, 587 F.Supp.2d at 388.

In addition, in *RenCare*, 395 F.3d at 559-60, the 5th Circuit held that state law claims brought by a provider of kidney dialysis services against Humana Health Plan of Texas, Inc., (an MA organization), seeking payment for services, were not subject to administrative appeals process under the Medicare Act. The Court held that Medicare Part C's mandatory administrative "appeals procedures" are intended for resolving disputes over "organization determinations." An organization determination is a decision by an MA organization "regarding the benefit an enrollee is entitled to receive under the MA plan policy and the amount, if any, that the enrollee is required to pay for a health service." *Id*. at 559 (citing 42 C.F.R. § 422.566). More specifically, an organization determination may be the MA organizations' "refusal to provide or pay for services, in whole or in part,… that the enrollee believes should be furnished or arranged by the MA organization." *Id*. (citing 42 CFR § 422.566(b)(3)). Enrollees have a right to a timely organization determination, and a right to appeal that decision through several levels of review (*i.e.*, Request for Redetermination, Request for Reconsideration, ALJ, MAC Appeal,

etc.).  However, if an "**enrollee has no further liability to pay for services that were furnished by an [MAO], a determination regarding these services is not subject to appeal.**"  *Id*. (citing 42 CFR sec. 422.562(c)(2)) (emphasis added).

In *RenCare*, the Court also focused on the fact that the administrative appeals process focuses on enrollees, **not** health care providers, and is designed to protect enrollees' rights to Medicare benefits.  Id.  The Court also explained why the Medicare appeals process does not apply to the provider's claims against the MA organization:

> **Humana's failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies.**  No enrollee has requested an organization determination or appeal.  No enrollee has been denied covered service or been required to pay for a service.  Rather, the [MA] enrollees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement.  In fact, there is a complete absence of [MA] beneficiary interest in this dispute.  The only interest at issue is RenCare's interest in receiving payment under its contract with Humana.

*Id*. at 559-60 (emphasis added).

Other district courts and jurisdictions have reached the same conclusion.  In *Medical Care System, supra*, 587 F. Supp. 2d at 384, the court held that "the Medicare Act does **not** provide a procedure for resolving disputes between MA organizations and health providers" (emphasis added).  In *Christus Health Gulf Coase v. Aetna, Inc.*, 237 S.W.3d 338, 344 (2007), the Texas Supreme Court held that hospitals seeking payment for treatment provided to Medicare HMO enrollees were not required to exhaust administrative remedies under the Medicare Act before proceeding in state court against those HMOs.  The Court applied *RenCare* and held that the hospitals were not challenging an organization determination, and the only

14

interest at issue was the hospital's interest in receiving payment from the MAO (Aetna). *Id*.

Similarly, in the instant case, none of UHC's enrollees appealed or requested an organization determination. No enrollees were denied covered service or required to pay for a service. Indeed, none of the enrollees bear any financial risk in that they all have already received the services for which we are seeking reimbursement from the MA organization. In other words, the enrollees here have absolutely no financial interest in dispute between SRMC and UHC. Therefore, UHC's decision to deny payment to SRMC is <u>not</u> an organization determination. SRMC's claims are <u>not</u> subject to the Medicare Part C 'exhaustion of administrative remedies' requirement.

## C. <u>SRMC SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT IF THE COURT GRANTS THE MOTION TO DISMISS.</u>

The Federal Rules of Civil Procedure require that leave to amend should be freely given "when justice so requires." Fed. Rules of Civ. Proc. Rule 15(a)(2); *see Lone Star Ladies Invest. Club v. Schlotzksy's Inc*., 238 F.3d 363, 367 (5th Cir. 2001) (policy favoring leave to amend "a necessary companion to notice pleading and discovery"). This policy is to be applied with "extreme liberality." *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013); *see American Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013), ("goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("a justifying reason must be apparent for denial of a motion to amend"). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

15

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma County*, *supra*, 708 F.3d at 1117.

Here, justice requires that SRMC be given leave to amend. SRMC has expressly alleged in its Complaint facts that may give rise to contracts-based causes of action (*see* Complaint ¶¶ 17 & 18), which then would make this matter more aligned with the *RenCare* case wherein the Court specifically held that Medicare appeals process does not apply to the provider's claims against the MA organization. *See RenCare*, *supra*, 395 F.3d at 559-60.

In addition, allowing SRMC to amend its Complaint would not cause undue delay or prejudice to UHC. Moreover, SRMC's request for leave to amend in the event the motion to dismiss is granted is not based on bad faith or any dilatory motive on the part of SRMC. And as explained above, SRMC expects to be able to cure its pleading's deficiencies, if any, by way of amendment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**PLAINTIFF PRIME HEALTHCARE SERVICES – SHASTA, LLC, dba SHASTA REGIONAL MEDICAL CENTER'S OPPOSITION TO DEFENDANT UNITED HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS**

## D. <u>CONCLUSION</u>

Removal jurisdiction is absent in this case. Thus, the case should be remanded to the Superior Court of the State of California in and for the County of Shasta, and UHC's Motion to Dismiss should be vacated and/or dismissed in its entirety. Even if removal jurisdiction existed, the Motion to Dismiss still lacks merit, and should be denied in its entirety. Finally, if the Court grants the Motion in any respect, SRMC respectfully requests leave to amend its complaint, as UHC certainly has not presented any reason to believe no viable claims exist here.

Dated: October 21, 2016

**TROY A. SCHELL, ESQ.**
**SEPAND AKHAVANHAIDARY, ESQ.**


By: _/s/ Sepand Akhavanhaidary_
      Sepand Akhavanhaidary, Esq.
      Attorneys for Plaintiff
      Shasta Regional Medical Center

17