HOGAN LOVELLS US LLP
Michael M. Maddigan (Bar No. 163450)
Poopak Nourafchan (Bar No. 193379)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com
poopak.nourafchan@hoganlovells.com

Attorneys for Defendant
United Healthcare Services, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA, LLC, a Delaware Corporation Doing Business As Shasta Regional Medical Center,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation licensed to do business in California, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 2:16-cv-01773-KJM-CKD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>[Judge Kimberly J. Mueller]<br><br>Date: November 4, 2016<br>Time: 10:00 a.m.<br>Ctrm: 3 |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| I. | PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE MEDICARE ACT AND THIS COURT THEREFORE HAS FEDERAL QUESTION JURISDICTION OVER THOSE CLAIMS | 2 |
| | A. The Medicare Act's Preemption Provision Provides A Basis For Federal Question Jurisdiction. | 2 |
| | B. The Medicare Act Governs UHC's Payment Obligations To A Non-Contracted Provider Like Prime. | 4 |
| | C. The Medicare Act Requires Prime to Exhaust Its Administrative Remedies Because There Is No Contract Between Prime and UHC. | 9 |
| II. | PRIME DOES NOT EVEN ADDRESS UHC'S ARGUMENT THAT THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. | 12 |
| III. | LEAVE TO AMEND SHOULD BE DENIED BECAUSE IT WOULD BE FUTILE. | 13 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple iPhone 3G Products Liab. Litig.*,
   728 F. Supp. 2d at 1077 .................................................................................................. 13

*Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan*,
   76 F. Supp. 3d 1388 (S.D. Fla. 2014) ............................................................................... 11

*Calif. Emergency Physicians Med. Grp. v. PacifiCare of Calif.*,
   111 Cal. App. 4th 1127 (2003) .................................................................................... 6, 12

*Caterpillar, Inc. v. Williams*,
   482 U.S. 386 (1987) .......................................................................................................... 1

*Cleghorn v. Blue Shield of California*,
   408 F.3d 1222 (9th Cir. 2005) ........................................................................................... 3

*Davies v. Krasna*,
   12 Cal. App. 3d 1049 (1970) ............................................................................................. 8

*Doctors Med. Ctr. Of Modesto, Inc. v. Kaiser Found. Health Plan, Inc.*,
   989 F. Supp. 2d 1009 (E.D. Cal. 2013) ................................................................ 7, 8, 9, 11

*Lasley v. New England Variable Life Ins. Co.*,
   126 F. Supp. 2d 1236 (N.D. Cal. 1999) ............................................................................. 3

*McCall v. PacifiCare of California, Inc.*,
   25 Cal. 4th 412 (2001) ....................................................................................................... 8

*Medical Card System, Inc. v. Equipo Pro Convalecensia*,
   587 F. Supp. 2d 384 (D. P.R. 2008) ............................................................ 5, 6, 7, 8, 9, 10

*Melamed v. Blue Cross of California*,
   CV 11-4540 PSG FFMX, 2011 WL 3585980 (C.D. Cal. Aug. 16, 2011) ........................ 3

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir.1989) ............................................................................................ 13

*New York City Health and Hospitals Corp. v. WellCare of New York, Inc.*,
   769 F. Supp. 2d 250 (S.D.N.Y. 2011) ............................................................................... 7

*Olivar v. Potter*,
   No. CIV S-09-0091 JAM DAD PS, 2010 WL 3717275 (E.D. Cal.
   Sept. 16, 2010) ............................................................................................... 12, 13

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir.1990) ..................................................................................... 13

*RenCare, Ltd. v. Humana Health Plan of Texas*,
   395 F.3d 555 (5th Cir. 2004) ................................................... 5, 7, 8, 9, 10, 13

*Rivet v. Regions Bank of Louisiana*,
   522 U.S. 470 (1998) ..................................................................................................... 1

*Roberts v. United Healthcare Servs., Inc.*,
   2 Cal. App. 5th 132 (2016) ........................................................................................ 5

*T & E Pastorino Nursery v. Duke Energy Trading & Mktg., LLC*,
   123 F. App'x 813 (9th Cir. 2005) ............................................................................ 3

*Tenet Healthsystem GB, Inc. v. Care Improvement S. Cen. Ins. Co.*,
   162 F. Supp. 3d 1307 (N.D. Ga. 2016) ........................................................ 7, 9, 11

*Uhm v. Humana*,
   620 F. 3d 1134 (9th Cir. 2010) ................................................................................. 5

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009) ....................................................................................................... 2

*Ward v. Circus Circus Casinos, Inc.*,
   473 F.3d 994 (9th Cir. 2007) .................................................................................. 13

*Weitzenkorn v. Lesser*,
   40 Cal. 2d 778 (1953) ................................................................................................. 9

*Wise v. Solar Turbines, Inc.*,
   14-CV-8 JLS JMA, 2014 WL 2573324 (S.D. Cal. June 9, 2014) ...................... 4

*Worth v. Universal Pictures, Inc.*,
   5 F. Supp. 2d 816 (C.D. Cal. 1997) ......................................................................... 3

*Yarick v. PacifiCare of California*,
   179 Cal. App. 4th 1158 (2009) ................................................................................ 5

*Zolezzi v. PacifiCare of California*,
   105 Cal. App. 4th 573 (2003) ................................................................................ 10

**Statutes and Rules**

42 C.F.R.
   § 417.558 ............................................................................................................... 4, 6
   § 422.214 ............................................................................................................... 4, 6
   § 422.214(a) ............................................................................................................... 9
   § 422.250 ............................................................................................................... 4, 6
   § 422.402 ................................................................................................................... 3

42 U.S.C.
   § 405(g) ................................................................................................................... 11
   § 405(h) ................................................................................................................... 13
   § 1395w–22(d)(1)(E) ............................................................................................. 4, 6
   §1395w-26(b)(3) ....................................................................................................... 2

FRCP 12(b)(1) .................................................................................................................. 4

**Other Authorities**

14B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* (3rd ed. 1998) ................................................................................................ 2

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/mc86c04.pdf, Medicare Managed Care Manual, Ch. 4 - Benefits and Beneficiary Protection, Section 110.1.3, "Services For Which MA Plans Must Pay Non-Contracted Providers And Suppliers." ............. 7

# INTRODUCTION

Prime's Opposition misses the mark, for three fundamental reasons.

***First,*** Prime never denies that its claims against United Healthcare Services ("UHC") are based on underlying claims for medical services provided to Medicare patients. Rather, it argues that the Medicare Act does not preempt its state laws claims because its claims are not "inextricably intertwined" with a claim for Medicare benefits. But this argument is flat-out wrong, and is undone by very the cases on which Prime relies. Those cases are wholly inapposite because they concern a contracted provider's claims for payment under its privately-agreed-to contract with a Medicare Advantage ("MA") organization. Plaintiff's Complaint, by contrast, is based on just the opposite theory – that the reason UHC owes it additional amounts for providing services to UHC members is that it is a ***non-contracted provider.*** As a non-contracted provider, however, Prime's claims for payment fall squarely within the ambit of the Medicare Act and are preempted by federal law.

***Second,*** although Prime's Opposition makes reference to a motion for remand (Oppo. at 6:24-25), as of the date of this filing, Prime has not filed any such motion. Regardless, any motion to remand would not be well-taken because federal preemption under the Medicare Act provides a basis for federal jurisdiction where, as here, federal regulations exist that govern plaintiff's claims.

Prime's position that preemption cannot establish federal question jurisdiction is flatly wrong. To the contrary, the United States Supreme Court long has recognized that "once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475-76 (1998), *citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392-93 (1987). Thus, because Prime's claims are completely preempted by the Medicare Act and its implementing regulations, this

Court has jurisdiction over those claims and UHC's removal was proper.

***Third,*** UHC demonstrated in its Motion that the Complaint should be dismissed on the separate and independent basis that it fails to plead facts sufficient to establish any of its state law causes of action as a matter of law. Prime failed even to address this argument in its Opposition – let alone defend any of its claims. Prime's silence essentially concedes the merits of UHC's arguments. Accordingly, UHC respectfully requests that this Court grant its Motion to Dismiss.

## I. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE MEDICARE ACT AND THIS COURT THEREFORE HAS FEDERAL QUESTION JURISDICTION OVER THOSE CLAIMS

### A. The Medicare Act's Preemption Provision Provides A Basis For Federal Question Jurisdiction.

Although Prime has not filed a motion to remand as it contends it has (Oppo. at 6:24-25), any motion for remand would nevertheless be subject to denial because it is well settled that federal preemption provides a basis for federal jurisdiction where, as here, a federal regulation governs plaintiff's claim. As the Supreme Court stated in *Vaden v. Discover Bank,* 556 U.S. 49, 61 (2009):

> A *complaint* purporting to rest on state law, we have recognized, can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal. Under this so-called 'complete preemption doctrine,' a plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'

(Emphasis in original, *citing* 14B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*, 3722.1, p. 511 (3rd ed. 1998)).

The Medicare Act contains a broad preemption provision which expressly states that "[t]he standards established under [the MA statutes] shall ***supersede any State law or regulation…with respect to MA plans*** which are offered by MA

organizations…." 42 U.S.C. §1395w-26(b)(3) (emphasis added). In its implementing regulations, the Centers for Medicare and Medicaid Services ("CMS") reiterated the preemptive reach of this provision, stating that the standards it has established for the Medicare Advantage Program "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations." 42 C.F.R. 422.402.

This express preemption of Prime's state law claims, as the United States Supreme Court has made clear, provides a basis for this Court to exercise federal question jurisdiction. And courts in the Ninth Circuit and throughout the nation regularly have denied motions to remand after finding preemption under a variety of federal statutes and regulations. Some examples of these rulings include:

- *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) (affirming district court's denial of plaintiff's motion to remand because plaintiff's unfair competition claims were preempted by ERISA);

- *Melamed v. Blue Cross of California*, CV 11-4540 PSG FFMX, 2011 WL 3585980 (C.D. Cal. Aug. 16, 2011) *aff'd*, 12-55284, 2014 WL 543409 (9th Cir. Feb. 12, 2014) (denying plaintiff's motion to remand on basis of preemption by ERISA);

- *Lasley v. New England Variable Life Ins. Co.,* 126 F. Supp. 2d 1236 (N.D. Cal. 1999) (denying motion to remand and granting motion to dismiss on grounds of preemption under Securities Litigation Uniform Standards Act (SLUSA) (which expressly provides for such removal of covered actions));

- *Worth v. Universal Pictures, Inc.,* 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) (denying plaintiffs' motion for remand because plaintiffs' state law copyright claims are completely preempted by the Federal Copyright Act); and

- *T & E Pastorino Nursery v. Duke Energy Trading & Mktg., LLC*, 123 F. App'x 813, 814 (9th Cir. 2005) (affirming district court's denial of motion for remand and granting motion to dismiss because customers' state law unfair competition claims were preempted by Federal Power Act).

Just as in these foregoing cases, so too here, the Medicare Act contains a specific regulation requiring Medicare Advantage plans (like UHC) to cover emergency services provided by non-contracted providers (like Prime). 42 U.S.C. § 1395w–22(d)(1)(E). And the Medicare Act likewise requires that non-contracted providers who provide services to MA members "must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. §422.250. *See also* 42 C.F.R. §§ 422.214 and 417.558. Thus, Prime's claim for payment for the emergency medical services it has rendered to UHC's MA members falls within these regulations, which is sufficient for preemption.

In sum, Prime's argument that this case should be remanded because this Court lacks subject matter jurisdiction to hear the case in the first instance is simply incorrect. The Supreme Court has taught clearly that preemption can provide a basis for federal jurisdiction where there is a federal regulation governing the conduct at issue, as there is here. The Ninth Circuit, courts in this District, and district courts around the country have applied that teaching to uphold federal jurisdiction and deny efforts to remand cases in circumstances where a plaintiff's state law claims are preempted by federal law. UHC respectfully requests that this Court do the same thing here.

### B. The Medicare Act Governs UHC's Payment Obligations To A Non-Contracted Provider Like Prime.

To the extent the underlying medical services at issue were provided to UHC's Medicare Advantage members (a fact Prime does not deny), not only does

the Medicare Act provide a basis for federal jurisdiction, but it also requires that Prime's claims be dismissed because Prime's claims must first be resolved in an administrative forum. *See* Mot. at 6-10. Straining to save its claims, however, Prime attempts to evade the preemptive power of the Medicare Act and the Ninth Circuit's holding in *Uhm v. Humana*, 620 F. 3d 1134 (9th Cir. 2010) by relying on case law that has either been disapproved, or is factually inapposite to the facts alleged in the Complaint.

First, Plaintiff's reliance on *Yarick v. PacifiCare of California*, 179 Cal. App. 4th 1158, 1167 (2009) is wholly misplaced, as *Yarick* recently was disapproved for the very same propositions that Prime cites. *See Roberts v. United Healthcare Servs., Inc.*, 2 Cal. App. 5th 132, 137, 145 (2016). Prime relies on *Yarick* to argue that: (1) Medicare preemption "only precludes application of 'positive state enactments' (i.e., statutes and administrative regulations)," and (2) "[c]ommon law claims may be preempted only where they conflict with federal law." Oppo. at 7:17-27. Both of these holdings, however, have been rejected.

In *Roberts*, the California Court of Appeal disagreed with the limitations in *Yarick,* and expressly "reject[ed] *Yarick's* holding that Part C's preemption clause reaches only positively enacted state laws and regulations. . . ." *Roberts*, 2 Cal. App. 5th at 145. In fact, *Roberts* adopted the federal preemption standard articulated in *Uhm,* and held that the Medicare Advantage preemption clause displaces state laws to the extent they touch upon areas regulated by the Medicare Advantage standards, ***including common-law rights*** as well as state statutes and regulations. *Id.* Thus, under the holding of *Roberts* and *Uhm,* Prime's common law causes of action clearly conflict with the federal regulations promulgated by the CMS with respect to a Medicare Advantage organization's payment obligations to non-contracted providers.

Second, Prime argues that the Medicare Act's broad preemption provision does not apply to a dispute between a Medicare Advantage organization, such as

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

UHC, and a downstream provider, like Prime. *See* Oppo. at 8:20-24. Again, Prime's argument is meritless, and the cases on which Prime relies, *RenCare, Ltd. v. Humana Health Plan of Texas*, 395 F.3d 555 (5th Cir. 2004) and *Medical Card System, Inc. v. Equipo Pro Convalecensia*, 587 F. Supp. 2d 384 (D. P.R. 2008), are factually inapposite.

Prime's entire Complaint is premised on its replete with allegations that the Shasta facility is a ***non-contracted, out-of-network provider***. *See* Docket 1-1, Cplt. ¶¶ 7, 10, 12, 16. Even though its entire Complaint is premised on the fact that it has ***no contract*** with UHC, Prime nevertheless purports to assert causes of action for breach of contract, breach of the implied covenant, and breach of its rights as a third party beneficiary, ignoring the long settled general rule under California law that hospitals and physician groups may not assert these claims against health plans based on the plans' contracts with individual members. *See, e.g., Calif. Emergency Physicians Med. Grp. v. PacifiCare of Calif.*, 111 Cal. App. 4th 1127, 1138 (2003) (sustaining demurrer without leave to amend plaintiff's claim for breach of contract on third party beneficiary theory where plaintiff was a non-contracted provider and failed to plead contract between insurer and insured was made expressly for its benefit, or that it was an intended beneficiary).

Because Shasta was a non-contracting provider under the Medicare Advantage program, ***Medicare regulations*** – and not a contract between the parties, as Prime would like this Court to believe – provide the standards governing UHC's payment obligations to Prime for services to Medicare Advantage members, and Plaintiff's reciprocal obligation to accept those payments. *See* 42 U.S.C. § 1395w–22(d)(1)(E); 42 C.F.R. § 422.214. The case law is replete with examples where an MA organization's (like UHC) payment obligation to a non-contracted provider (like Prime) are governed by, and inextricably intertwined with, the Medicare Act [1]:

---

[1] The Medicare Act requires Medicare Advantage plans (like UHC) to cover emergency services provided by non-contracted providers (like Prime). 42 U.S.C.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

- *Doctors Med. Ctr. Of Modesto, Inc. v. Kaiser Found. Health Plan, Inc.*, 989 F. Supp. 2d 1009, 1013 (E.D. Cal. 2013) (finding that MA organization's payment obligation with respect to non-contracting hospitals "turns on" Medicare Act and CMS regulations);
- *Tenet Healthsystem GB, Inc. v. Care Improvement S. Cen. Ins. Co.*, 162 F. Supp. 3d 1307, 1310 (N.D. Ga. 2016) ("The Medicare Act requires MA plans to cover emergency services provided by non-contracted providers. . . .");
- *New York City Health and Hospitals Corp. v. WellCare of New York, Inc.*, 769 F. Supp. 2d 250, 258 (S.D.N.Y. 2011) (because there is no contract, "reimbursement is governed by a complex federal regulatory scheme").

Thus, contrary to Prime's contentions, Prime's implied-in-law and implied-in-fact causes of action do not convert this case to an express contract claim for an agreed upon amount of payment. Simply put, because there is no contract governing UHC's payment obligations to Prime, the Medicare Act governs UHC's payment obligations.

For this reason, Prime's reliance on *RenCare* and *Medical Card System* is misguided. In *RenCare*, the dispute at issue was "solely between Humana and RenCare and [was] based on the ***parties' privately-agreed-to payment plan***."

---

§ 1395w–22(d)(1)(E). And the Medicare Act likewise requires that non-contracted providers who provide services to MA members "must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. §422.214. *See also* 42 C.F.R. §§ 422.250 and 417.558. In other words, under CMS's mandate, an MA plan generally satisfies its payment obligations for services furnished by a non-contracting provider if it pays the provider an amount the provider would have been entitled to collect under traditional (or "original") Medicare. *See* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/mc86c04.pdf, Medicare Managed Care Manual, Ch. 4 - Benefits and Beneficiary Protection, Section 110.1.3, "Services For Which MA Plans Must Pay Non-Contracted Providers And Suppliers."

*RenCare*, 395 F.3d at 558 (emphasis added). Indeed, it was only because "RenCare's claims [were] claims for payment ***pursuant to a contract*** between private parties" that RenCare's claims were not found to be "inextricably intertwined" with a claim for benefits under the Medicare Act – and not, as Plaintiffs suggest, because the Medicare Act simply does not apply to ***"any dispute"*** over payment between an MA organization and downstream provider.[2] *See, e.g., RenCare*, 395 F.3d at 559 (emphasis added). In fact, *RenCare* was distinguished by *Doctors Medical Center of Modesto* on this very basis, because the *RenCare* court found that the only interest at issue was the provider's in receiving payment under its privately-agreed-to contract with the MA organization. *See Doctors Med. Ctr. of Modesto*, 989 F. Supp. 2d at 1014.

Similarly, the parties in *Medical Card System* also had entered into an express Supplier Agreement for the sale of durable medical equipment. 587 F. Supp. 2d at 386. The Court granted defendant's motion to dismiss for lack of subject matter jurisdiction because the Medicare Act does not apply to "private contractual obligations," and for that reason alone, the Court held that "Medicare Part C does not preempt contractual claims between MA organizations and health care providers." *Id.* at 388-89.

Prime has asserted claims for *quantum meruit*, breach of contract – third party beneficiary, and breach of contract – assignment from members. *See* Docket 1-1, Cplt., ¶¶ 15-18, 25-29. As hard as Prime strains to transform its quasi-contract claims into a true contract claim, it cannot do so as a matter of law. The law is clear

---

[2] Prime also incorrectly relies on *McCall v. PacifiCare of California, Inc.*, 25 Cal. 4th 412 (2001). *McCall* interpreted only Parts A and B of the Medicare Act, which do not have an express preemption clause, and not Part C, which does have one. In fact, *McCall* was decided under Medicare law as it existed before Congress created the Medicare Advantage program in 1997. The *McCall* court expressly acknowledged that, in creating the Medicare Advantage program, Congress enacted a "noteworthy" preemption provision, but held that that provision was not applicable "at the time relevant to this case." *McCall*, 25 Cal. 4th at 422.

-8-
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

that an implied-in-law contract is not really a contract. *Davies v. Krasna*, 12 Cal. App. 3d 1049, 1054 (1970). "Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Id.*, *citing Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953).

As the Complaint itself makes clear, no express contract exists here, and Prime's arguments cannot change that fact. Thus, Prime's common law claims for reimbursement for emergency treatment rendered to UHC's Medicare Advantage enrollees are expressly preempted by the federal standards governing a Medicare Advantage organization's payment obligations to a non-contracting hospital. *See, e.g., Doctors Med. Ctr. of Modesto,* 989 F. Supp. 2d at 1014 ("[I]n this case ... the Hospital does not allege that it had an express written contract with [the MA organization] to provide emergency medical services….[and] the dispute over [the MA organization]'s payment obligation turns on the standards provided by the Medicare Act and CMS regulations for paying non-contracted emergency providers when a primary payer may be liable."); *Tenet*, 162 F. Supp. 3d at 1310 ("Payment amounts due to a non-contracted emergency provider are limited to what 'the provider would collect if the beneficiary were enrolled in original Medicare.'") (*citing* 42 C.F.R. §422.214(a)). Accordingly, each of Prime's state law claims should be dismissed to the extent it is based on services provided to UHC's Medicare Advantage members.

### C. The Medicare Act Requires Prime to Exhaust Its Administrative Remedies Because There Is No Contract Between Prime and UHC.

Prime also argues that it is not compelled to exhaust its administrative remedies because its claims are not "inextricably interconnected" with a claim for benefits under the Medicare Act. Oppo. at 12-15. Once again, however, Prime's argument disregards the very cases on which it purports to rely.

As discussed above, both *RenCare* and *Medical Card System* involved a

-9-
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

contract, and in both cases, the court held that the Medicare Act did not apply to private contractual obligations. *See*, *e.g.*, *RenCare*, 395 F.3d at 558-59; *Medical Card System,* 587 F. Supp. 2d at 388-89 ("We find that Medicare Part C does not preempt contractual claims between MA organizations and health care providers."). Indeed, even the portion of the *RenCare* opinion Prime cites confirms this: "The only interest at issue is RenCare's interest in receiving payment ***under its contract*** with Humana." *See* Oppo. at 12:25-27, citing *RenCare*, 587 F. Supp. 2d at 560 (emphasis added). And tellingly, consistent with ***UHC's*** argument, the court in *Medical Card System* noted in a footnote that it "would lack federal question jurisdiction even if [it] determined that Plaintiffs' claims for relief arose under the Medicare Act [because] [t]he Medicare Act 'strips federal courts of primary federal-question subject matter jurisdiction' and instead requires plaintiffs to seek an ***administrative hearing*** before the Secretary of the Department of Health and Human Services," just as Prime should have done here. *Medical Card System*, 587 F. Supp. 2d at 388 (emphasis added).

Not surprisingly, Prime's reliance on *Zolezzi v. PacifiCare of California*, 105 Cal. App. 4th 573 (2003), is also in error. That case involved a contract between a member and her health plan, and the issue before the court was whether Medicare Part C preempted the statutory disclosure requirements for arbitration clauses in health care service plans. Contrary to Prime's assertions, the case did not even involve the issue of having to exhaust administrative remedies. In fact, *Zolezzi* actually supports ***UHC's*** arguments because the court held that the Medicare Act's preemption statute applies to state law causes of action that seek payment or reimbursement of a Medicare claim or otherwise fall within the Medicare administrative review process. *Zolezzi,* 105 Cal. App. 4th at 586.

That is precisely the case here. The Medicare Act (and its implementing regulations) restricts judicial jurisdiction over claims that arise under the Act to those that properly have been appealed from a final administrative decision. As

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

more fully set forth in the Motion, in the event a non-contracting provider wants to challenge a payment it has received from a Medicare Advantage provider – as Prime seeks to do here – CMS regulations set forth an administrative appeal process that allows a provider to seek judicial review in federal court pursuant to 42 U.S.C. § 405(g) only *after* the non-contracting provider has undertaken all the necessary steps and the Medicare Appeals Council makes its final decision.

Prime's Complaint alleges no facts showing that it exhausted its administrative remedies, and in its Opposition, it contends that it does not have to do so because its claims are not subject to Medicare Part C's "exhaustion of administrative remedies." Oppo. at 15:8-10. As the case law amply demonstrates, however, Prime's argument lacks merit and its state law claims should be dismissed. *See, e.g., Doctors Med. Ctr. of Modesto*, 989 F. Supp. 2d at 1014 (motion to dismiss granted where non-contracted hospital sued Medicare Advantage plan for reimbursement for emergency services without first exhausting its administrative remedies); *Tenet Healthsystem*, 162 F. Supp. 3d at 1310, 1315 (granting motion to dismiss because non-contracted provider's claim against MA organization for payment for emergency services was "inextricably intertwined" with a claim for Medicare benefits, and "must be administratively exhausted before they are presented to a District Court for review"); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan,* 76 F. Supp. 3d 1388, 1390-91, 1393 (S.D. Fla. 2014) (dismissing suit for payment of Medicare benefits to Medicare beneficiaries for lack of subject matter jurisdiction because plaintiff was first required to exhaust the administrative remedies of the Medicare Act).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. PRIME DOES NOT EVEN ADDRESS UHC'S ARGUMENT THAT THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In its Motion, UHC demonstrated that Prime's Complaint should be dismissed on the grounds that it fails to plead facts sufficient to establish any of its state law causes of action as a matter of law. *See* Mtn. at pp. 16-24.

First, UHC demonstrated that Prime's cause of action for violations of Business & Professions Code section 17200 failed to state a claim for relief because Prime failed to allege facts sufficient to show that UHC acted unlawfully, unfairly or fraudulently. *See* Mtn. at pp. 17-20.

Second, UHC demonstrated that Prime's claim for *quantum meruit* also fails to state a claim for relief because the Complaint pleads no facts that could establish the reasonable value of Prime's services. Moreover, there can be no "implied in law promise" for UHC to pay Prime a "reasonable value" for the services it rendered where, as here, federal regulations determine the amount of money owed for services rendered by Prime to UHC's members. *See, e.g., California Emergency Physicians Med. Grp.*, 111 Cal. App. 4th at 1137 (affirming dismissal of *quantum meruit* claim without leave to amend where the Legislature had specified the payment obligations in the situation at hand). *See* Mtn. at 20-21.

Third, UHC argued that Prime's claims for breach of contract (third party beneficiary and assignment from members) and breach of the implied covenant of good faith and fair dealing also failed to state a claim. With respect to its claim that it was a third party beneficiary of the contracts between UHC and its members, Prime failed to set forth any specific facts or language to support its claims. *See* Mtn. at pp. 21-22. Similarly, Prime's claim for breach based on "assignment from members" was based on the sole allegation that in the Condition of Admissions form, the patient assigns "direct payment to [Prime] of all insurance benefits otherwise payable to or on behalf of the patient…, including emergency

services…at a rate not to exceed the hospital's actual charges." Docket 1-1, Cplt. ¶ 31. Assuming this is true, it means only that the patient assigned his alleged "right" to receive direct payments from UHC to Prime – nothing more. Given that Prime's pseudo-contract claims fail as a matter of law, Prime also cannot state a claim for breach of the covenant of good faith and fair dealing. *See* Mtn. at p. 23.

Prime failed to address any of these arguments in its Opposition. Given that Prime has offered no argument to rebut UHC's showing, UHC has met its burden that the Complaint fails to state a claim for which relief can be granted. *Olivar v. Potter,* No. CIV S-09-0091 JAM DAD PS, 2010 WL 3717275 at **4-5 (E.D. Cal. Sept. 16, 2010). Accordingly, the Complaint should be dismissed.

### III. LEAVE TO AMEND SHOULD BE DENIED BECAUSE IT WOULD BE FUTILE.

The Court should grant UHC's motion to dismiss without leave to amend, as any amendment to the Complaint would be futile. A district court does not err in denying leave to amend where the amendment would be futile, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990), or where the amended complaint would be subject to dismissal. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir.1989).

Here, Prime cannot overcome the fundamental futility of any amendment it makes to the Complaint. First, to the extent Prime's claims pertain to services provided to Medicare Advantage members, those claims are preempted by the Medicare Act, and no amendment can save those claims. *See*, *e.g., In re Apple iPhone 3G Products Liab. Litig.*, 728 F. Supp. 2d at 1077 (granting defendant's motion to dismiss on preemption grounds with prejudice); *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir. 2007) (holding that district court did not abuse its discretion in denying leave to amend where plaintiff's claims were preempted).

Second, the Medicare Act's "exhaustion requirement," 42 U.S.C. § 405(h),

-13-

makes the exhaustion of administrative remedies a jurisdictional prerequisite to filing a lawsuit. Only once the Secretary of Health and Human Services has issued a "final decision" may the individual seek judicial review of that determination. No amendment to the Complaint can change this condition precedent.

And third, contrary to Prime's arguments, it cannot plead any facts that would make this case aligned with the court's ruling in *RenCare*, because that case involved an express contract between the parties that included a specific payment provision. Conversely, no such contract exists here. The Complaint is replete with allegations that Prime is a non-contracted provider, and no amendment can change that fundamental fact. For this reason as well, any amendment to the Complaint would be futile.

## **CONCLUSION**

For all the foregoing reasons, UHC respectfully requests that this Motion be granted, and that the Complaint be dismissed with prejudice.

Dated: October 28, 2016

HOGAN LOVELLS US LLP
MICHAEL M. MADDIGAN
POOPAK NOURAFCHAN


By:/s/ Michael M. Maddigan, Esq.
    Michael M. Maddigan
    Attorneys for Defendant UHC
    Health Plan