UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PRIME HEALTHCARE SERVICES – SHASTA, LLC, a Delaware Corporation doing business as Shasta Regional Medical Center,

Plaintiff,

v.

UNITED HEALTHCARE SERVICES, INC., a Minnesota Corporation licensed to do business in California, and DOES 1 through 100, Inclusive,

Defendants.

No. 2:16-cv-01773-KJM-CKD

ORDER

Plaintiff provided emergency services to defendant's health insurance members and then later sued defendant under state law for allegedly scant reimbursements. Plaintiff is Prime Healthcare Services – Shasta, LLC ("Prime"), a non-contracted emergency services provider. Prime contends defendant United Healthcare Services, Inc. ("UHC") ran a "payment scheme" that "intentionally and artificially deflated" the amounts it reimbursed Prime for emergency services, which violated UHC's contractual duties and state law. UHC now moves to

dismiss. Mot., ECF No. 11. Prime opposes. Opp'n, ECF No. 17. The court submitted the motion, ECF No. 23, and as explained below, the court GRANTS it with leave to amend.

I. BACKGROUND

Prime alleges it provided "emergency services, post-stabilization services, and other services" to UHC's members beginning in approximately May 2013. Compl. ¶¶ 8, 14, Ex. A, ECF No. 1. Although Prime billed UHC for "the reasonable value of the emergency services" calculated as "100% of [Prime's] standard undiscounted rates[,]" Prime contends UHC paid less. *Id.* ¶¶ 8, 14, 16. Prime alleges UHC "intentionally and artificially deflated" the amounts it paid Prime for out-of-network emergency services, violating UHC's contractual duties, the Knox-Keene Act and the California Insurance Code. *Id.* ¶¶ 8–11, 13, 18, 29.

Prime initially sued UHC in state court, asserting causes of action for: (1) quantum meruit, (2) unfair competition under California Business & Professions Code section 17200, (3) breach of contract as a third party beneficiary, (4) breach of contract through an assignment of rights, and (5) breach of the covenant of good faith and fair dealing. *Id.* ¶¶ 19–32. UHC removed the case based on both diversity and federal question jurisdiction, asserting that Prime's claims arise under federal law and that the Medicare Act preempts Prime's claims. Not. Removal ¶ 1, ECF No. 1. UHC now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

II. SUBJECT MATTER JURISDICTION (RULE 12(B)(1))

UHC moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). On a Rule 12(b)(1) dismissal motion, the applicable standard depends on the nature of the jurisdictional challenge. If the jurisdictional challenge is facial, the court assumes the factual allegations in the complaint are true and assesses if they establish jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the challenge is factual, meaning it disputes the existence of subject matter jurisdiction in fact, then "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publ'g Co. v.*

*Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen*, 549 F.2d at 889). In a factual attack, the court may consider evidence beyond the pleadings. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (in assessing jurisdiction, the court may consider affidavits, testimony, or any other evidence properly before it).

Here, UHC raises a factual jurisdictional challenge. Prime concedes the lack of jurisdiction in part, albeit for different reasons. Prime contends the court never had subject matter jurisdiction and should remand the matter to state court without ruling on UHC's motion. Opp'n 6.[1] UHC contends the court has power to rule on the motion because the case involves a federal question, but should dismiss for lack of subject matter jurisdiction because Prime did not exhaust administrative exhaustion requirements. Mot. 6–14.

Assessing jurisdiction involves a multi-step process. First, the court must determine if the case qualifies based on one of the two primary foundations for a federal court's subject matter jurisdiction: federal question or diversity. 28 U.S.C. §§ 1331, 1332. If neither is present "the district court lacks subject matter jurisdiction [and] the case shall be remanded" to the state court. 28 U.S.C. § 1447(c). If a basis for jurisdiction is present, the first step is satisfied but the court is not absolved of the need to address other jurisdictional bars.

A. <u>Step One: Diversity or Federal Question Jurisdiction</u>

District courts exercise diversity-of-citizenship jurisdiction in cases in which the amount in controversy exceeds $75,000 and the parties are in complete diversity. 28 U.S.C. § 1332. District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The complaint itself, rather than counterclaims or defenses, must generally contain the federal question, *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908), though a preemption defense can be an exception to this rule. *See Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1372 (9th Cir. 1987). Here, the parties agree they are diverse, in that Prime is a citizen of Delaware and California, and UHC is a citizen of Minnesota. Compl.

---

[1] Prime claims to have a pending motion to remand, but has filed no such motion.

3

¶¶ 1–2.  The amount in controversy is "no less than $1,534,445.10."  *Id.* ¶¶ 2–3, 8; Not. Removal ¶ 1.  The court has diversity jurisdiction.

UHC also contends the federal Medicare Act's preemptive influence in this case poses a federal question.  Mot 10.  But having established diversity jurisdiction, the court need not reach this question.

B.     Step Two: Other Bars to Subject Matter Jurisdiction

Establishing diversity jurisdiction is merely the starting point.  The court may still lack subject matter jurisdiction if other jurisdictional bars apply.  As here, a claim may implicate as a prerequisite an administrative review process that, until fully complied with, deprives the court of jurisdiction.  *See Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1111–14 (9th Cir. 2003) (affirming dismissal of claims under Rule 12(b)(1) based on plaintiff's failure to exhaust administrative remedies).  In this respect, UHC argues Prime's claims implicate the Medicare Act and so Prime's failure to exhaust the Act's administrative exhaustion requirement warrants Rule 12(b)(1) dismissal.  Mot. 6.  Prime contends its claims do not trigger the exhaustion requirement.  Opp'n 12.

The Medicare Act and its implementing regulations bar federal court jurisdiction over Medicare Act claims until the available Health and Human Service's administrative appeals process concludes.  Indeed, 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii,[2] provides that 42 U.S.C. § 405(g) is "the sole avenue for judicial review" for claims "'arising under' the Medicare Act."  *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *see* 42 C.F.R. § 422.566(b)(1) (setting forth administrative appeal process that allows a provider to request an organization determination "with respect to . . . (1) Payment for…emergency services, poststabilization care, or urgently needed services."); *see also* 42 C.F.R. § 422.582 (providing an

---

[2] 42 U.S.C. § 1395(ii) provides, in relevant part, that "[n]o action . . . to recover on any claim arising under" the Medicare laws shall be "brought under [28 U.S.C. §] 1331."  It channels virtually all Medicare claims through this administrative review system.  *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 1 (2000) (citing 42 U.S.C. § 1395(ii)).

avenue for the provider to seek reconsideration of the organization determination). A claim "arises under" the Medicare Act when "both the standing and the substantive basis" for the claim derives from the Medicare Act. *Heckler*, 466 U.S. at 615. Failure to exhaust such a claim leads to dismissal. *See Kaiser*, 347 F.3d at 1111–14 (affirming Rule 12(b)(1) dismissal based on Medicare provider's failure to exhaust administrative remedies); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1144 (9th Cir. 2010) (finding no jurisdiction over contract and unjust enrichment claims arising under Medicare Act where plaintiff did not first exhaust grievance process).

Here, the parties dispute the Medicare Act's applicability. UHC argues that because no contract governs its emergency service payments to Prime, the Medicare Act and its implementing regulations dictate its payment obligations, at least for UHC's Medicare Advantage ("MA") members.[3] Mot. 13; 42 C.F.R. §§ 422.214, 417.558, 422.520. Yet the complaint does not plead which class of members Prime serviced. *See, e.g.*, Compl. ¶¶ 9, 11, 14. Evidence properly before the court shows Prime serviced at least some of UHC's MA enrollees. *See* Gretchen Hess Decl. ¶¶ 2, 3, Ex. E, ECF No. 1-5. Prime neither rebuts this evidence nor argues it serviced only non-MA members. Instead, Prime argues its claims do not sufficiently intertwine with Medicare benefits questions to trigger the Act's exhaustion requirement. Opp'n 8–14.

Prime bases its argument on *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555 (5th Cir. 2004), *statutorily superseded on other grounds by* 42 U.S.C. § 1395w–24(a)(1)(A) (2014). In *RenCare*, the Fifth Circuit held that because the provider's state law claims were not "inextricably intertwined with a claim for Medicare benefits" they did not arise under the Act. *Id.* at 560. *RenCare* involved an express contract between the hospital and provider, which the court emphasized was "subject to very few restrictions" because the parties were free to negotiate their own terms. *Id.* at 559–60 (internal citations omitted). Accordingly, the *RenCare* court found "[t]he only interest at issue [wa]s RenCare's interest in receiving payment under its contract with Humana." *Id.* at 560. The court concluded Humana's failure to

---
[3] Medicare Advantage members are part of a managed health care arrangement that extends Medicare health coverage to the private insurance market. *See* https://www.medicarehealthplans.com/advantage-plans (last visited Sept. 29, 2017).

5

pay under its express contract with RenCare did not trigger the Act's exhaustion requirement. *Id.* Prime would transform this limited holding, persuasive at best, into a blanket rule that the Act's exhaustion requirement attaches only when health care enrollees' rights are at issue, not where, as here, a provider's rights are at issue. Opp'n 12, 14.

The court disagrees. *RenCare* is persuasive only in the circumstance in which an express written agreement defines a specified rate for medical services. Compl. ¶¶ 8–9. Here, as noted, Prime and UHC have no express contract. The Medicare Act might dictate procedures or "inextricably intertwine" with Prime's reimbursement claims, but Prime's vague complaint prohibits the court from determining to what extent this may be so. The complaint's lack of pertinent detail and silence with respect to any compliance with the Act's exhaustion requirement warrants dismissal at this stage. The court GRANTS UHC's Rule 12(b)(1) motion to dismiss, but with leave to amend if Prime can amend while complying in full with Federal Rule of Civil Procedure 11.

III. FAILURE TO STATE A CLAIM (RULE 12(B)(6))

The complaint's vagueness also supports dismissal under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant such a motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes the allegations are true and draws reasonable inferences from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need contain only a "short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Twombly*, 550 U.S. at 555. But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. Accordingly, conclusory or formulaic recitations of a cause's elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Rule 12(b)(6) assessments are context-specific, requiring courts to draw on "judicial experience and common sense." *Id.* at 679.

6

1  UHC moves to dismiss each claim under Rule 12(b)(6), and Prime asks only that it
2  be granted leave to amend, but otherwise offers no opposition.  *See* Opp'n 16.

    A.    Prime's UCL Claim (Claim Two)

To state a claim for relief under California Business and Professions Code section 17200 (the "UCL"), Prime must allege facts tending to show UHC acted unlawfully, unfairly or fraudulently. *See*, *e.g.*, *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). As UHC argues, Prime has not so alleged. *See* Mot. 17–20.

To succeed under the unlawful prong, a claim must show a plausible statutory violation. *See*, *e.g.*, *Maystruk v. Infinity Ins. Co.*, 175 Cal. App. 4th 881, 886 (2009); *Berryman*, 152 Cal. App. 4th at 1554–55 (granting motion to demur as to plaintiff's UCL claim without leave to amend where the complaint pled no allegations to find defendants actually violated cited statutes). Prime claims UHC's insufficient reimbursement for emergency services violates the Knox-Keene Act and the Insurance Code. Compl. ¶¶ 8, 13–14, 16–18, 20–22. But its factual allegations do not plausibly support these violations. The Knox-Keene Act requires hospitals to offer emergency care even if a patient cannot pay, requires health plans to reimburse the providers and delineates prompt payment rules. *See* Cal. Health & Saf. Code §§ 1371, 1371.35, 1371.4. The relevant Insurance Code provisions mandate prompt reimbursement for certain emergency services. *See* Cal. Ins. Code §§ 10123.13, 10123.147, 10133(a). The problem for Prime, however, is its complaint does not plead what services Prime performed, when it performed them, when or how much UHC paid Prime or how UHC's payments diluted statutory standards. Prime's UCL claim as pled does not survive under the unlawful prong.

Prime's UCL claim also does not survive under the "unfair" prong because the complaint neither references an established public policy UHC purportedly violated nor alleges sufficient details to show UHC's practice was immoral and unethical. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

Finally, Prime's UCL claim does not survive under the fraudulent prong because Prime does not plead that UHC's business practice will likely deceive the public. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th

1255, 1274 (2006) (complaint failed under UCL's fraud prong where plaintiff pled no facts showing how defendant's act deceived the public).

The court DISMISSES Prime's UCL claim, here also with leave to amend.

B. Quantum Meruit (Claim One)

As discussed above, to the extent Prime serviced UHC's MA members, federal regulations determine the amount UHC owes. The regulatory requirements negate Prime's contention that UHC implicitly promised to pay a "reasonable value." *See, e.g.*, *Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*, 111 Cal. App. 4th 1127, 1137 (2003) (affirming dismissal of quantum meruit claim where legislature specified payment obligations), *disapproved of on other grounds by Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 1 Cal. 5th 994 (2016). The complaint also lacks facts necessary to establish the "reasonable value" of Prime's services such as service type or Prime's normal rate. The court DISMISSES this claim, with leave to amend.

C. Breach of Contract Claims (Claims Three, Four, and Five)

Prime alleges it has no contract with UHC, yet asserts three contract-related claims. *See* Compl. ¶¶ 7, 31.

First, Prime asserts rights as a third-party beneficiary to the Evidence of Coverage between UHC and its members. *Id.* ¶¶ 25–29. Under California law, "third party beneficiary status" depends on contract interpretation and "the contract must be set out in the pleadings." *Cal. Emergency Physicians*, 111 Cal. App. 4th at 1138. Here, because the complaint insufficiently pleads contract formation, implied or otherwise, the complaint does not support a third-party beneficiary claim.

Prime premises its second contract claim on UHC's members' assignment of their insurance benefit rights to Prime. Compl. ¶¶ 26–27, 31. The only language supporting this claim comes from the "Condition of Admissions" form that specifies the rate of "direct payment to [Prime] of all insurance benefits otherwise payable to or on behalf of the patient . . . including emergency services . . . [is] not to exceed the hospital's actual charges." *Id.* ¶ 31. Although Prime alleges it steps into a patient's shoes for benefit entitlement purposes when the patient signs

8

this form, the language merely shows a patient assigned his or her alleged "right" to receive direct payments from UHC to Prime. *Id.* ¶ 31. Because this assignment, even if valid, has nothing to do with UHC's alleged failure to pay Prime for billed charges, this claim does not survive under Rule 12(b)(6).

Without a legal hook for its two contract claims above, Prime cannot maintain its claim for breach of the covenant of good faith and fair dealing. Prime admits in its pleading that it is a non-contracted provider. *Id.* ¶¶ 7, 32. But "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1165 (E.D. Cal. 2009) (dismissing breach of implied covenant claim where parties had no contractual relationship). Although more detailed pleadings may establish this contractual relationship, the current complaint does not.

The court DISMISSES Prime's three contract-based claims, also with leave to amend.

IV. <u>CONCLUSION</u>

The vagueness of Prime's complaint supports dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court GRANTS UHC's motion to dismiss the complaint, with leave to amend. Prime must file any amended complaint within thirty (30) calendar days.

This order resolves ECF No. 29.

IT IS SO ORDERED.

DATED: September 29, 2017.

_____
UNITED STATES DISTRICT JUDGE